Stephen EINHORN, Plaintiff-Appellant,†

v.

James D. CULEA, Northern Labs, Inc. and Northern Labs Manufacturing, Inc., Defendants-Respondents.

Court of Appeals

*No. 97–3592. Submitted on briefs December 28, 1998.—Decided February 24, 1999.*

(Also reported in 591 N.W.2d 908.)

†Petition to review granted.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Robert H. Friebert* and *Matthew W. O'Neill* of *Friebert, Finerty & St. John, S.C.* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Dean P. Laing* of *O'Neil, Cannon & Hollman, S.C.* of Milwaukee.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

NETTESHEIM, J.    Section 180.0744, STATS., provides that if an independent special litigation committee (SLC) of a corporation has determined that a derivative action against the corporation is not in the corporation's best interest, the circuit court shall dismiss the action upon motion of the corporation.

Pursuant to this statute and following a trial on the issue of whether the members of the SLC were "independent," the circuit court dismissed Stephen Einhorn's amended complaint stating a derivative action against Northern Labs, Inc. and Northern Labs Manufacturing, Inc. (collectively Northern Labs) and James D. Culea, a majority stockholder and a member of the board of directors. Prior to this ruling, the court

had rejected Einhorn's direct action against Culea and directed that Einhorn instead file the derivative action.

Einhorn appeals. He raises the following challenges to the trial court's ruling: (1) the trial court erred when it refused to allow him to pursue a direct action against Culea; (2) the SLC was improperly created by Culea's lawyer in violation of § 180.0744, STATS.; (3) the members of the SLC were not independent and were inherently biased; and (4) the corporation's attorney compromised the SLC's independence by acting as the committee's counsel. We reject Einhorn's claims. Accordingly, we affirm.

## BACKGROUND

Northern Labs, Inc. and Northern Labs Manufacturing, Inc. are located in Manitowoc, Wisconsin. Prior to 1986, Northern Labs was a subsidiary of S.C. Johnson Wax. Culea worked at Northern Labs as a division manager for S.C. Johnson Wax. In 1985, Culea, Einhorn and Einhorn's business partner, Orville Mertz, formed an investor group which acquired Northern Labs in December 1985 for $3,648,000.

After the acquisition, the Northern Labs stock was distributed as follows: Culea 56.09%, Einhorn 20.60% and Mertz 20.06%.[1] The remainder of the stock was owned by other managers and directors. Culea has served as president, manager, director and majority shareholder of Northern Labs since 1986. Einhorn is a director and minority shareholder.

At the time of its acquisition, Northern Labs had annual sales of $16 million and generated little profit.

---

[1] These percentages are based on Culea's affidavit. We note that while Einhorn's affidavit asserts a different allocation of stock, the allocation alleged in Einhorn's complaint is in accordance with those alleged by Culea.

During the period between 1986 and 1992, Northern Labs' sales and profits increased. At the end of the 1993 fiscal year, Northern Labs was generating $33 million in sales and $1.9 million in profits.

In 1992, Culea sought a retroactive performance bonus because he had been undercompensated in the years following the acquisition.[2] In May 1992, he sent a notice to the directors of the company scheduling a compensation committee meeting and a board of directors meeting for July 29, 1992. At the time, the company's board of directors consisted of Culea, his wife, Shelly Culea, Einhorn, Mertz and the company's vice president of finance, Robert Bonk. Mertz, Culea and Bonk comprised the compensation committee.

On July 29, 1992, the compensation committee unanimously approved a retroactive bonus to Culea of $300,400, a portion of which would be paid with 1500 shares of Class B Northern Labs treasury stock which Culea valued at $122.23 per share.[3] A board of directors meeting was held immediately after. Einhorn did not attend the July 1992 meeting. The four board members in attendance—Culea, Mertz, Bonk and Shelly Culea—voted unanimously to adopt and ratify the compensation committee's decisions. Prior to the bonus award at the board meeting, Northern Labs' stock allocation had changed because Mertz and two other

[2] Culea's proposed bonus was based, in part, on a management compensation study performed by Ernst & Young.

[3] According to Northern Labs' articles of incorporation, its common stock was divided into Class A stock and Class B stock which gave stockholders identical rights and preferences with respect to the election of its seven directors. Class A stockholders elected five Class A directors, while Class B stockholders elected two Class B directors. Culea was the sole Class A stockholder. Mertz and Einhorn owned Class B stock.

stockholders had sold their shares for $122.23 per share. Following Culea's stock compensation, the allocations were: Einhorn 22%, Culea 76% and Bonk 2%.[4]

On December 9, 1993, Einhorn filed a direct action against Culea. Einhorn alleged that Culea had "willfully breached his fiduciary duties to Einhorn by participating in and causing the companies to implement a self-dealing retroactive bonus award of $300,000 to Culea and the self-dealing issuance to Culea of stock for no consideration or at best a grossly inadequate price." Einhorn alleged that as a result of Culea's "improper effort . . . to squeeze [him] out," he had been "damaged by the dilution of his percentage ownership in the companies and by a reduction in the value of his interest in the companies . . . ." Einhorn sought a judgment ordering Culea to surrender the stock to Northern Labs and to reimburse Northern Labs for all cash payments received by him for retroactive bonus payments.

Culea responded in part that Einhorn's complaint failed to state a cause of action because the exclusive remedy for the alleged misconduct is set forth in the derivative action statutes. On May 3, 1994, Culea filed a motion for summary judgment arguing that: (1) the Northern Labs' bylaws and the Wisconsin and Delaware statutes permitted the board of directors to offer a bonus to Culea and issue stock to him, (2) the board of

---

[4] Einhorn asserts, based on the sale of stock by Mertz and the other shareholders, that prior to the board meeting, his ownership in Northern Labs was 26%, Culea's ownership was 71% and Bonk's was 3%. Therefore, according to Einhorn, his percentage ownership in Northern Labs decreased following Culea's bonus. Culea focuses on Einhorn's ownership increase from Einhorn's original holdings of 20.60% to his postbonus ownership interest of 22%.

directors' ratification of the compensation committee's recommendations is binding on the corporation and its shareholders, and (3) Einhorn improperly filed his suit in an individual capacity instead of in a derivative capacity.

After considering arguments from both parties, the trial court issued a decision and order granting Culea's motion and giving Einhorn thirty days to amend his complaint to state a derivative action. Einhorn did so, raising allegations similar to those in his original complaint.

Following Einhorn's amended complaint stating a derivative action, Northern Labs' board of directors was notified that, pursuant to § 180.0744, STATS., it would be voting on whether the maintenance of a derivative action was in the best interests of the corporation. At that time, the board of directors consisted of seven members. Pursuant to Northern Labs' articles of incorporation, five were appointed by Culea and two by Einhorn. Culea appointed himself, Shelly Culea, Robert Bonk and his neighbors, Dwight Chewning and Lolita Chua. Einhorn appointed himself and his business partner, John Beagle.[5]

The board of directors met on December 16, 1994. Northern Labs' corporate counsel, Dennis W. Hollman, advised that because Einhorn, Culea and Shelly Culea had an interest in the dispute, they should not participate in any vote as directors or as potential members of any SLC which might be created. At this meeting, an SLC was created and Chewning, Bonk, Chua and Beagle were appointed as its members. After five months of meetings and approximately 500 hours of inquiry, a

---

[5] Beagle was appointed at a board meeting earlier that fall. Chewning and Chua were appointed at the December 16, 1994 board meeting.

majority of the SLC voted that the continuation of Einhorn's derivative action was not in the best interests of the corporation.

Based on the SLC's vote and pursuant to § 180.0744(1), STATS., Culea filed a motion to dismiss Einhorn's derivative action. Einhorn responded with a motion for discovery requesting that he "be allowed to conduct and complete discovery on issues relating to the recommendation of the [SLC]." In a decision and order dated October 30, 1995, the trial court denied Culea's motion to dismiss stating:

> [I]t is the opinion of the Court that the issues in this case have narrowed considerably, but that [Culea] is not entitled to a dismissal when viewing all of the pleadings, papers, affidavits, and statements that have been filed in the light most favorable to the Plaintiff. This Court is not prepared to find as a matter of *fact* that the described independent board members met the criteria set forth in Wisconsin Statute 180.0744.

The trial court then held a seven-day trial on the issue of the independence of the SLC's members pursuant to § 180.0744(3), STATS. On November 17, 1997, the court issued a decision stating its findings regarding the credibility and qualifications of the persons who served on the SLC. The court's decision assessed each member's independence. After observing that "the threshold established by the legislature in determining independence is extremely low," the court found that "the special committee formed to determine whether this action should go forward was independent within the meaning of Section 180.0744 Wisconsin Statutes." The court further found that the committee "acted in good faith and made its determination from conclu-

sions based upon a reasonable inquiry into the facts and circumstances surrounding the complained of actions." The court then dismissed Einhorn's derivative action. Einhorn appeals.

## DISCUSSION

### Dismissal of Einhorn's Direct Action

Einhorn first contends that the trial court erroneously required him to amend his complaint to state a derivative action against Culea. He argues that claims involving the acts of majority shareholders, which are intentionally designed to dilute the value of another individual's shares, are properly brought via a direct action. Culea responds that the depletion of corporate assets which results in dilution of a shareholder's stock can only be asserted as a derivative, not individual, action.[6] We agree with Culea.

---

[6] The trial court ordered Einhorn to amend his pleading in a decision dated October 24, 1994. Culea argues that Einhorn's failure to appeal the trial court's decision is fatal to the jurisdiction of our court. Culea raised this argument by a motion filed on March 20, 1998, requesting the dismissal of that portion of Einhorn's appeal relating to the trial court's October 1994 decision. We denied Culea's motion in an order dated May 4, 1998. On appeal, Culea requests that we reconsider our order. We decline to do so.

We note that Culea additionally raises arguments regarding the merits of Einhorn's derivative action. We need not reach Culea's arguments given that we affirm the trial court's dismissal of the derivative action pursuant to § 180.0744, STATS., based on the SLC's determination that the action would not be in the best interests of Northern Labs. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1993). Likewise, we need not resolve the parties' dispute as to whether Culea

Whether the trial court properly required Einhorn to raise his claims in a derivative action is a question of law which we review de novo.[7] *See Blue Cross & Blue Shield United v. Fireman's Fund Ins. Co.*, 132 Wis. 2d 62, 64–65, 390 N.W.2d 79, 80 (Ct. App. 1986), *aff'd*, 140 Wis. 2d 544, 411 N.W.2d 133 (1987) (whether a complaint states a claim upon which relief can be granted presents a question of law which we review de novo). Based on the applicable law, we conclude that the trial court appropriately rejected Einhorn's direct action in favor of a derivative action.

■

In *Rose v. Schantz*, 56 Wis. 2d 222, 228–29, 201 N.W.2d 593, 597–98 (1972), our supreme court stated:

> [W]here some individual right of a stockholder is being impaired by the improper acts of a director, the stockholder can bring a direct suit on his own behalf because it is his individual right that is being violated.
>
> However, it is also true in this state that: "Rights of action accruing to a corporation belong to the corporation, and an action at law or in equity, cannot be maintained by the members as individuals. . . ."
>
> . . . .
>
> That . . . primary and direct injury to a corporation may have a subsequent impact on the value of

attached the appropriate value to the Northern Labs stock in calculating his bonus.

[7] Relying on our decision in *Read v. Read*, 205 Wis. 2d 558, 563–65, 556 N.W.2d 768, 770–71 (Ct. App. 1996), Einhorn asserts that the standard of review is whether the court erred in the exercise of its discretion. However, unlike this case, *Read* addressed the issue of standing. We conclude that the issue presented in this case is one of law.

the stockholders' shares is clear, but that is not enough to create a right to bring a direct, rather than derivative, action. Where the injury to the corporation is the primary injury, and any injury to stockholders secondary, it is the derivative action alone that can be brought and maintained. [Footnotes omitted.]

Relying on *Rose*, Einhorn contends that the dilution of his ownership interest in Northern Labs is the primary injury resulting from Culea's bonus and, therefore, his claim is properly brought as a direct action. We are unpersuaded. We conclude that Einhorn's damage is derivative of Culea's conduct against the corporation.

Culea's bonus was paid by Northern Labs in both cash and stock. Although the corporation's stock payment may have diluted Einhorn's ownership percentage, the primary injury resulting from any improper actions was to the corporation. Indeed, Einhorn's complaint alleges that his damages were caused by "Culea's wrongful misappropriation of corporate assets to Culea's personal use." Thus, the corporation is the principal aggrieved party and, therefore, the corporation must redress the wrong in its own name and in its own right. *See Mid-State Fertilizer Co. v. Exchange Nat'l Bank*, 877 F.2d 1333, 1335 (7th Cir. 1989); *see also Read v. Read*, 205 Wis. 2d 558, 570, 556 N.W.2d 768, 773 (Ct. App. 1996) ("[A]bsent an individual right, a shareholder may not bring suit for actions accruing to the corporation.").

Einhorn relies on our decision in *Jorgensen v. Water Works, Inc.*, 218 Wis. 2d 761, 582 N.W.2d 98 (Ct. App. 1998), in support of his contention that the trial court's dismissal of his direct action was improper. Einhorn's reliance is misplaced. In *Jorgensen*, the plaintiffs were two of six equal shareholders and direc-

tors of Water Works, Inc. *See id.* at 766, 582 N.W.2d at 100. After disagreements occurred between the plaintiffs and the four other shareholders, the plaintiffs brought a direct action against the other directors alleging in part that the defendants had breached their fiduciary duty to the plaintiffs and caused injury to them by diverting corporate assets, paying themselves fees out of dividends and by removing the plaintiffs from their positions as officers and directors. *See id.* at 767, 582 N.W.2d at 101. Relying on *Read*, the trial court in *Jorgensen* concluded that the plaintiffs could not bring a direct action on any of their claims but only a derivative action on behalf of the corporation. *See Jorgensen*, 218 Wis. 2d at 770, 582 N.W.2d at 102.

On appeal, we concluded that the plaintiffs' claim alleging diversion of corporate assets resulted in injuries primarily to the corporation and therefore, under *Rose*, any claim belonged to the corporation. *See Jorgensen*, 218 Wis. 2d at 776, 582 N.W.2d at 104. However, we further concluded that the plaintiffs also alleged injuries that were primarily injuries to themselves as individuals. Namely, the plaintiffs' claims that the defendants used dividends which belonged in part to them for the payment of fees and bonuses and that the plaintiffs removal from their positions as directors alleged injuries that were primarily injuries to the plaintiffs as individuals. *See id.* at 776–77, 582 N.W.2d at 104. We therefore reversed the trial court's dismissal of these particular claims. *See id.* at 789, 582 N.W.2d at 109.

Our decision in *Jorgensen* does not support Einhorn's argument. Here, Einhorn's injuries stem indirectly from an alleged improper diversion of corporate assets for Culea's bonus. As stated in *Jorgensen*, a claim based on the improper diversion of corporate

867

assets belongs to the corporation and not to the individual shareholder. *See id.* at 776, 582 N.W.2d at 104. We conclude that the trial court properly required Einhorn to raise his claims by derivative action.

### *The Special Litigation Committee*

#### 1. Formation of the SLC

Einhorn next challenges the formation and independence of the SLC. Einhorn first argues that the SLC was improperly created by Culea's lawyer in violation of § 180.0744, STATS. Section 180.0744 provides:

> **(1)** The court shall dismiss a derivative proceeding on motion by the corporation if the court finds, subject to the burden of proof assigned under sub. (5) or (6), that one of the groups specified in sub. (2) or (6) has determined, acting in good faith after conducting a reasonable inquiry upon which its conclusions are based, that maintenance of the derivative proceeding is not in the best interests of the corporation.
>
> **(2)** Unless a panel is appointed [by the court] under sub. (6), the determination in sub. (1) shall be made by any of the following:
>
> (a) A majority vote of independent directors present at a meeting of the board of directors if the independent directors constitute a quorum.
>
> (b) A majority vote of a committee consisting of 2 or more independent directors appointed by majority vote of independent directors present at a meeting of the board of directors, whether or not the voting, independent directors constitute a quorum.[8]

---

[8] Section 180.0744(6), STATS., creates an alternative form of an SLC not used in this case:

Since an SLC was utilized in this case, we are concerned with its formation under subsec. (2)(b) of the statute. Einhorn contends that the process by which the SLC was created was tainted. Specifically, he argues that "Culea and his lawyer violated the statute by creating an SLC themselves." In support, he points to the trial court's statement that "the committee came into existence upon the advice of corporate counsel." As such, Einhorn concludes that the evidence does not show that the majority of the directors who formed the committee were independent.

We reject this argument. We do not deem it remarkable that the SLC came into existence upon the advice of Hollman, the corporate counsel. An SLC was an option available to the corporation in light of Einhorn's lawsuit. Hollman would understandably alert the directors of this option. The trial court's observation about this fact does not translate into a finding that the directors who created the SLC were not independent as required by § 180.0744(2)(b), STATS. As we have noted, Hollman expressly advised Einhorn, Culea and Shelly Culea not to participate in the decision to create the SLC or to serve as members of the SLC itself. We acknowledge that the creation of the SLC could have been better documented. However, the four independent members of the board of directors—Chewning, Chua, Bonk and Beagle—were all present when the vote was taken to form the SLC. Hollman had advised that only these four persons should vote on the question. These same directors were then selected as the

Upon motion by the corporation, the court may appoint a panel of one or more independent persons to determine whether maintenance of the derivative proceeding is in the best interests of the corporation. . . .

members of the SLC. The totality of the facts surrounding this event support the inference that these same members voted as directors to create the SLC.

We reject Einhorn's argument that the SLC was improperly formed.

## 2. Independence of the SLC

Einhorn contends that certain members of the SLC were not independent because they were friends or close business associates of Culea. The trial court held a seven-day hearing on this issue prior to finding that the committee was "independent" within the meaning of § 180.0744, STATS. Einhorn now challenges the trial court's ruling.

Whether the trial court properly found that the SLC was independent within the meaning of § 180.0744, STATS., presents a mixed question of fact and law. We will not reverse the trial court's findings of fact as to the independence of the SLC members unless they are clearly erroneous. *See* § 805.17(2), STATS. However, we review de novo the trial court's application of § 180.0744 to the facts as found. *See Maxey v. Redevelopment Auth.*, 120 Wis. 2d 13, 18, 353 N.W.2d 812, 815 (Ct. App. 1984).

Section 180.0744, STATS., does not set forth any affirmative requirements as to independence. Rather it instructs only as to what may not be used to determine independence:

> **(3)** Whether a director is independent for purposes of this section may not be determined solely on the basis of any one or more of the following factors:
> (a) The nomination or election of the director by persons who are defendants in the derivative proceeding or against whom action is demanded.

870

(b)   The naming of the director as a defendant in the derivative proceeding or as a person against whom action is demanded.

(c)   The approval by the director of the act being challenged in the derivative proceeding or demand if the°act resulted in no personal benefit to the director.

Section 180.0744(3). The issue at the trial in this case was whether the members of the SLC were independent.

Einhorn alleges that the SLC was not independent because Bonk and Beagle were close business associates of Einhorn and Culea and because Chewning and Chua were "social friends of the Culeas who were asked to join the Northern Labs board specifically to become members of the SLC." According to Einhorn, these relationships, standing alone, are sufficient to show that the members lacked independence. We disagree.

In defining "independence" under § 180.0744, STATS., both parties cite to § 7.44 of the Model Business Corporations Act (MBCA) upon which § 180.0744 is patterned. The Official Comments to § 7.44 state:

> The decisions which have examined the qualifications of directors making the determination have required that they be both "disinterested" in the sense of not having a personal interest in the transaction being challenged as opposed to a benefit which devolves upon the corporation or all shareholders generally, and "independent" in the sense of not being influenced in favor of the defendants by reason of personal or other relationships. *See, e.g., Aronson v. Lewis*, 473 A.2d 805, 812–16 (Del. 1984).

MODEL BUS. CORP. ACT ANNOTATED § 7.44 commentary at 7–342–43 (1997 Supp.).

871

Einhorn contends that the trial court improperly refused to consider the relevant factors to determine independence, including whether the director has a personal or business relationship with a party. He additionally contends that the trial court's findings are clearly erroneous and that the court applied an "anything goes" standard when determining independence. We disagree with Einhorn's assessment.

In applying § 180.0744(3), STATS., the trial court noted that the threshold for a determination of independence is "extremely low" given that even a defendant to the action may not automatically be disqualified. However, the record belies Einhorn's assertion that the trial court applied an "anything goes" standard. The trial court heard and considered evidence as to each member over a seven-day period and then issued a well-reasoned decision regarding each member's independence.

At the close of the trial, the trial court made the following findings with respect to each member of the committee:

> As to Mr. Bonk, it would appear that while he did receive a bonus at the same meeting of the board where Mr. Culea received his bonus, it does not appear that there was a quid pro quo or any other type of linkage between the two bonuses. In fact, it should be noted that [Einhorn] has not made Bonk's $25,000 bonus a subject of this lawsuit. In addition, Mr. Bonk, a long time employee of Northern Labs, had a history at the corporation that pre-dated the acquisition of Northern Labs by the present stockholders. Therefore . . . this court fails to find any inherent basis upon which his independence could be challenged.
>
> Dwight Chewning, while a neighbor of James Culea, appeared to have more than walked the

extra mile in an attempt to diligently fulfill the duty that had been thrust upon him. It should also be noted that although Chewning still maintains a residence near Culea, he presently and for the foreseeable future will continue to be employed in the City of Los Angeles . . . . He especially impressed this Court with both his knowledge of proper business practices and the zeal [with] which he pursued the committee's mission.

Lolita Chua, while a social friend of Mrs. Culea and apparently at times in this matter outside the area of her specialty, did not display on the witness stand any indication that she had acted or voted in such a manner that was the product of either pressure or bias or fear of making a decision adverse to her friend, Mrs. Culea. John Beagle, who could fairly be characterized as Mr. Einhorn's "right hand man" and who certainly raised issues consistent with that standing, could legitimately disagree from his point of view without having his independence necessarily compromised.

It is evident from its decision that the trial court took into account each member's relationship to Einhorn and the Culeas. In doing so, it is also evident that the court did not find that any of the members were influenced by their respective relationships with either the Culeas or Einhorn.

On appeal, Einhorn generally objects to Culea's appointment of "friends, neighbors and business allies—persons [he] could control and influence" to the board of directors and later to the committee. However, "[i]t is the care, attention and sense of individual responsibility to the performance of one's duties, not the method of election, that generally touches on independence." *Aronson*, 473 A.2d at 816. The trial court determined that each member demonstrated the requi-

site care and attention to his or her duties as SLC members.

■

Einhorn additionally points to testimony from certain members which might indicate a bias toward the Culeas. However, it is not our function to review questions as to the weight of testimony and credibility of witnesses. These are matters to be determined by the trier of fact and their determination will not be disturbed where more than one reasonable inference can be drawn from credible evidence. *See Johnson v. Merta*, 95 Wis. 2d 141, 151, 289 N.W.2d 813, 818 (1980). Because the trial court's assessment of each member's independence was based on facts supported by the record, we cannot conclude that the trial court's findings are clearly erroneous. Moreover, "[a]llegations of natural bias not supported by tangible evidence of an interest on the part of the Committee in the outcome of the litigation do not demonstrate a lack of independence." *Kaplan v. Wyatt*, 499 A.2d 1184, 1189 (Del. 1985).

Finally, Einhorn contends that Hollman served as counsel to both the corporation and the SLC, compromising the SLC's independence. Hollman and his firm, O'Neill, Cannon & Hollman, represented both Culea personally and Northern Labs. Hollman was present at the December 16 board of directors meeting at which the SLC was formed. At this meeting, Hollman explained the statutory procedure underlying the SLC and its function. Einhorn contends that Hollman misinformed the committee regarding its duties and misled it to believe that the committee had to take action by either voting for the action to proceed or be dismissed.

However, Culea contends that Hollman did not act as counsel to the SLC. This is supported by the evidence which shows that Hollman did not attend the SLC meetings and, according to Chewning's testimony, Hollman was deliberately excluded from the meetings. In addition, the SLC obtained independent counsel from Washington, D.C. to review certain documents and to evaluate the independence of the committee.

█
Although the trial court's decision does not specifically address Hollman's participation in the process, we infer from the trial court's finding of independence that it did not deem Hollman's role to be improper. *See State v. Phillips*, 218 Wis. 2d 180, 199 n.7, 577 N.W.2d 794, 803 (1998) ("This court may assume that a missing finding was determined in favor of the circuit court's order or judgment."). Because there is evidence in the record to support a finding that Hollman did not act as counsel for the SLC and that Hollman did not improperly influence the SLC members, we reject Einhorn's contention that Hollman's role impaired the independence of the SLC.

## CONCLUSION

We conclude that the trial court properly required Einhorn to bring a derivative action. We further conclude that the trial court's finding that the SLC was "independent" within the meaning of § 180.0744, STATS., is not clearly erroneous. The record contains evidence that the members exercised independent judgment in voting to dismiss the derivative action and that Hollman did not improperly influence the SLC's decision. We therefore uphold the trial court's dismissal of Einhorn's derivative action pursuant to

§ 180.0744 based upon the SLC's determination that maintenance of the action was not in the best interests of Northern Labs.

*By the Court.*—Order affirmed.