# SOJITZ AMERICA CAPITAL CORPORATION
## *v.* TODD A. KAUFMAN ET AL.
### (AC 33735)

Beach, Alvord and Schaller, Js.

Argued September 6, 2012—officially released March 26, 2013

*Mark S. Gregory,* for the appellant (plaintiff).

*Lawrence G. Rosenthal,* with whom were *Benjamin Engel* and, on the brief, *Fletcher C. Thomson,* for the appellees (defendants).

*Opinion*

SCHALLER, J. The plaintiff, Sojitz America Capital Corporation, appeals from the judgment of the trial court dismissing its shareholder derivative complaint against the named defendant, Todd A. Kaufman, on behalf of the nominal defendant, Keystone Equipment Finance Corporation (Keystone).[1] On appeal, the plaintiff claims that the trial court erred when it granted the defendants' motion to dismiss pursuant to General

---

[1] Hereafter, we refer to Kaufman as the defendant, to Keystone by name, and to both defendants collectively as the defendants.

Statutes § 33-724. Specifically, the plaintiff claims that the court erred in concluding that a majority of qualified directors determined in good faith, after conducting a reasonable inquiry, that the maintenance of the plaintiff's action was not in the best interests of the corporation. We affirm the judgment of the trial court.

The record reveals the following facts and procedural history.[2] It is undisputed that the plaintiff entered into a stock purchase agreement with Keystone, wherein the plaintiff became a minority shareholder of Keystone, and that Keystone is engaged in the business of providing commercial equipment financing to its clients.

On January 14, 2011, the plaintiff commenced the shareholder derivative action. In its complaint, the plaintiff alleged the following facts. During the relevant times, Keystone's board of directors consisted of the defendant, the defendant's father, Alan Kaufman, Paula J. Amazeen and William Hammock. In the course of business, the defendant provided certifications to various financial lending institutions on which Keystone depended to meet its financing needs. The plaintiff argued that these certifications falsely attested that the Keystone board of directors met, adopted resolutions and empowered Keystone's officers to enter into lending agreements on behalf of Keystone. The plaintiff specifically alleged that by submitting these false certifications, the defendant exposed Keystone to potential liability in the form of bank fraud, common-law fraud and rescission of existing credit lines; that the defendant's actions constituted a breach of the fiduciary

---

[2] In conducting our analysis, we reviewed the record before the trial court, consisting of the plaintiff's complaint, the defendants' motion to dismiss, the plaintiff's opposition to the defendants' motion and the parties' respective memoranda of law in support thereof as well as exhibits, which included affidavits, correspondence and corporate documents. See part I of this opinion.

duties he owed to Keystone; and that Keystone had sustained damages as a result of this breach. The plaintiff finally asserted that the defendant, Alan Kaufman and Amazeen either knew or acted in reckless disregard of the defendant's actions and, therefore, were not in a position to determine objectively whether the shareholder derivative litigation was in the best interests of the corporation.

The plaintiff argues that in response to the defendant's breaches, it sent a demand letter to the Keystone board of directors. In its letter, the plaintiff demanded that Keystone take appropriate action against the defendant for his breaches of the fiduciary duties of loyalty and care he owed to the corporation, including terminating his employment for cause, removing him from Keystone's board of directors and filing a civil action against him. The plaintiff further demanded that the board appoint an independent committee to investigate these issues and to determine the extent of the defendant's breaches. In subsequent correspondence to the plaintiff, the board of directors rejected the plaintiff's demand, concluding that pursuing litigation against the defendant was not in the best interests of the corporation.

On April 5, 2011, the defendants filed a motion to dismiss the action pursuant to § 33-724. The defendants argued that because the statutory elements had been satisfied, the court must dismiss this action. Specifically, the defendants asserted that a quorum of qualified directors determined, after a thorough inquiry, that maintaining a derivative action was not in the best interests of the corporation. The defendants further argued that the plaintiff failed to meet its burden of proof because it failed to allege particularized and well pleaded facts to establish that the directors did not comply with the statute and also failed to allege any specific damages suffered by Keystone.

In support of the motion to dismiss, the defendant submitted his affidavit and several appendices referenced therein. The documents appended included Keystone's certificate of incorporation, Keystone's bylaws and the board of directors' meeting minutes from March 15, 2011. According to the defendants, the foregoing documents demonstrated that Keystone's directors were qualified, and that they concluded in good faith after a reasonable inquiry that pursuing the shareholder derivative action was not in the corporation's best interests, thereby satisfying § 33-724.

The plaintiff opposed the defendants' motion to dismiss, arguing that the directors making the determination were neither independent nor disinterested and, therefore, were not qualified as required by the statute. The plaintiff further argued that the directors failed to conduct a reasonable investigation, and instead relied on and adopted the findings and determination prepared by the defendant's own attorney. The court granted the defendants' motion to dismiss. This appeal followed. Additional facts will be set forth as necessary.

On appeal, the plaintiff claims that the court improperly granted the defendants' motion to dismiss pursuant to § 33-724. Specifically, the plaintiff argues that the court erred in concluding that a majority of qualified directors determined in good faith, after conducting a reasonable inquiry, that maintaining the plaintiff's derivative proceeding was not in the best interests of the corporation. We are not persuaded.

I

We note at the outset that our appellate courts have not previously applied § 33-724 and, therefore, resolving the question raised on appeal presents an issue of first impression. Section 33-724[3] provides for a statutory dismissal derived from, and substantially similar to, § 7.44

[3] General Statutes § 33-724 provides in relevant part: "(a) A derivative proceeding shall be dismissed by the court on motion by the corporation

of the Model Business Corporation Act (model act).[4] Model Business Corporation Act, § 7.44, p. 7-72. We look to our legislative history, not to interpret the meaning of our statute, but for guidance in determining the appropriate standard of review that should govern the substantive challenges to its application.[5] See *Stone* v. *R.E.A.L. Health, P.C.*, Superior Court, judicial district

if one of the groups specified in subsection (b) or (e) of this section has determined in good faith, after conducting a reasonable inquiry upon which its conclusions are based, that the maintenance of the derivative proceeding is not in the best interests of the corporation.

"(b) Unless a panel is appointed pursuant to subsection (e) of this section, the determination in subsection (a) of this section shall be made by: (1) A majority vote of qualified directors present at a meeting of the board of directors if the qualified directors constitute a quorum . . . .

"(c) If a derivative proceeding is commenced after a determination has been made rejecting a demand by a shareholder, the complaint shall allege with particularity facts establishing either (1) that a majority of the board of directors did not consist of qualified directors at the time the determination was made, or (2) that the requirements of subsection (a) of this section have not been met.

"(d) If a majority of the board of directors consisted of qualified directors at the time the determination was made, the plaintiff shall have the burden of proving that the requirements of subsection (a) of this section have not been met. If a majority of the board of directors did not consist of qualified directors at the time the determination was made, the corporation shall have the burden of proving that the requirements of subsection (a) of this section have been met. . . ."

[4] Section 7.44 of the model act authorizes courts to conduct a limited inquiry into the *process* of the board's decision, but not to review the reasonableness of the board's determination to reject a demand or seek dismissal of a derivative action. Model Business Corporation Act, supra, § 7.44, official comment, pp. 7-74 and 7-75. The limited judicial review set forth in § 7.44 parallels the approach taken in *Auerbach* v. *Bennett*, 47 N.Y.2d 619, 393 N.E.2d 994, 419 N.Y.S.2d 920 (1979). See Model Business Corporation Act, supra, § 7.44, official comment, p. 7-76. In *Auerbach*, the court concluded that "[t]he business judgment rule does not foreclose inquiry by the courts into the disinterested independence of those members of the board . . . . Indeed the rule shields the deliberations and conclusions . . . of the board only if they possess a disinterested independence . . . ." *Auerbach* v. *Bennett*, supra, 631. By contrast, other jurisdictions permit courts to apply their own independent business judgment, thereby scrutinizing the reasonableness of the board's conclusions. See, e.g., *Zapata Corp.* v. *Maldonado*, 430 A.2d 779, 789 (Del. 1981); Model Business Corporation Act, supra, § 7.44, official comment, p. 7-76.

[5] Because we are not looking to the legislative history to construe the statute but instead for guidance in its application, we conclude that finding an ambiguity in the statutory language is not necessary.

of New Haven, Docket No. CV-98-414972 (November 15, 2000) (29 Conn. L. Rptr. 219) (due to undeveloped case law, Superior Court turned to legislative history for guidance regarding application of statutory provisions within Connecticut Business Corporation Act, General Statutes §§ 33-600 through 33-998).

The recorded legislative history sheds light on the motivations for deriving our statute from the model act.[6] In addition to achieving uniformity with other jurisdictions, the legislative history indicates that our jurisdiction's case law on corporate law is sparse, suggesting that courts, attorneys and corporations would benefit from the guidance provided by the model act's official comments as well as the case law of jurisdictions that have similarly codified the model act.[7] Accordingly, in

---

[6] "The legislative history of the law in Connecticut demonstrates a desire to consider the Model Business Corporation Act and its commentary as expressive of the intent of the legislature in passage of the act. In proceedings on the floor of the state House discussing the passage of the Connecticut version of the Model Business Corporation Act . . . Representative Richard D. Tulisano stated: 'I also wanted to put on the record that there are in fact commentaries that have been established which help one interpret this act, both at the Connecticut commentary and there is commentary to the model act that people should look to for reference and understanding of the intent of the drafters of the legislation. I also ought to be very honest that I have not read all of those, nor do I necessarily agree with all of those commentaries and for whatever that means for legislative purposes, certainly the proponents of the bill would like that to be looked at. It is probably the normal way of interpreting the legislation. In the future, it's the way the [Uniform Commercial Code] was done and it's probably the way it should be done here.' 37 H.R. Proc., Pt. 18, 1994 Sess., p. 6446." *Stone* v. *R.E.A.L. Health, P.C.*, supra, 29 Conn. L. Rptr. 223.

[7] See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 17, 2009 Sess., p. 5282; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 16, 2009 Sess., p. 5236; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 7, 2006 Sess., pp. 2047–48; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 1994 Sess., pp. 1801–1802; 37 H.R. Proc., Pt. 18, 1994 Sess., p. 6437.

These advantages were proffered as part and parcel of the greater goal of promoting uniformity and predictability in our corporate law to increase corporate formation in our state. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 17, 2009 Sess., p. 5281.

resolving these issues, we will also consider the statutory language, the model act's official comments and the case law of jurisdictions with similar statutes.[8]

As a preliminary matter, we set forth the appropriate standard of review that our appellate courts should apply when reviewing the trial court's judgment dismissing a shareholder derivative action pursuant to § 33-724. The plaintiff argues that our standard of review is plenary while the defendant asserts that this issue constitutes a purely factual determination and, thus, our review must comport with the clearly erroneous standard. We conclude that the issue of whether the trial court erred in dismissing the action presents a mixed question of fact and law.

In so holding, we depart from the well settled standard of review typically applied to motions to dismiss. Generally, in reviewing a motion to dismiss "a court must take the facts to be those alleged in the complaint . . . construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Cogswell* v. *American Transit Ins. Co.*, 282 Conn. 505, 516, 923 A.2d 638 (2007). The court may supplement the complaint with undisputed facts, but "[w]hen issues of fact are necessary to the determination of a court's jurisdiction . . . due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence . . . ." (Internal quotation marks omitted.) *Gordon* v. *H.N.S. Management Co.*, 272 Conn. 81, 92, 861 A.2d 1160 (2004). This standard, however, is not attuned to the unique circumstances presented when considering the dismissal of a shareholder derivative action pursuant to § 33-724.

---

[8] Several jurisdictions that have also enacted § 7.44 of the model act with little substantive change include Arizona, Georgia, Hawaii, Idaho, Iowa, Maine, Massachusetts, Mississippi, Montana, Nebraska, New Hampshire, North Carolina, Rhode Island, South Dakota and Wisconsin. 2 Model Business Corporation Act Annotated (4th Ed. 2011) § 7.43, annotation, p. 7-336.

Section 33-724 is distinguishable from other motions to dismiss, as it sets forth a unique, heightened pleading standard and elements that must be either proven or disproven.[9] General Statutes § 33-724. In light of these substantive requirements, other jurisdictions have similarly concluded that dismissals pursuant to § 7.44 of the model act are unique. See, e.g., *Halebian* v. *Berv*, 644 F.3d 122, 130 (2d Cir. 2011) ("[t]he procedure contemplated by section 7.44 . . . does not easily fit within the constraints of Rule 12 [b] [6]" of the Federal Rules of Civil Procedure); *Frank* v. *LoVetere*, 363 F. Sup. 2d 327, 332–33 (D. Conn. 2005) (setting forth different standards of review for defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12 [b] and § 33-724, respectively); *Zapata Corp.* v. *Maldonado*, 430 A.2d 779, 787 (Del. 1981) (classifying these motions as "a hybrid summary judgment motion for dismissal"); *Thompson* v. *Scientific Atlanta, Inc.*, 275 Ga. App. 680, 683, 621 S.E.2d 796 (2005) (such motions do not technically fit within category of rule 12 [b] motion). Accordingly, to facilitate inquiries into the presence or absence of the statutory elements set forth in these dismissal statutes, these jurisdictions have concluded that trial courts, in their discretion, may issue discovery orders. See, e.g., *Halebian* v. *Berv*, supra, 133 (discovery within court's discretion); *Kaplan* v. *Wyatt*, 499 A.2d 1184, 1192 (Del. 1985) (discovery may be ordered, in discretion of trial court, to facilitate inquiries into independence, good faith and reasonableness of investigation). In rendering judgments on these motions to dismiss, trial courts and appellate courts have thus reviewed the entire record, consisting of the complaint and documents submitted

---

[9] Section 7.44 of the model act, from which § 33-724 was derived, "sets forth both substantive standards for adjudicating the effectiveness of a board's rejection of a demand *and* instructions regarding the procedure by which that rejection must be communicated to—and its validity established before—a court." (Emphasis in original.) *Halebian* v. *Berv*, 644 F.3d 122, 130 (2d Cir. 2011).

in support of and opposition to the motion to dismiss—in some instances the courts have even considered and resolved disputed factual issues. See, e.g., *Frank* v. *LoVetere*, supra, 330 and n.1 (federal court set forth facts as stated in complaint, exhibits, depositions and correspondence); *Blake* v. *Friendly Ice Cream Corp.*, Superior Court of Massachusetts, Hampden County, Docket No. 030003, 2006 WL 1579596 (Mass. Super. Ct. May 24, 2006) (21 Mass. L. Rptr. 131) (trial court rendered judgment based on complaint and record and also resolved factual disputes). For these reasons, we conclude that a departure from the usual standard of review governing motions to dismiss is warranted, and further conclude that a dismissal pursuant to § 33-724 should be reviewed as a mixed question of fact and law.

In reaching this conclusion, we find persuasive the standards of review set forth by other jurisdictions, which have also codified § 7.44 of the model act. See footnote 8 of this opinion. Two such states, Wisconsin and Florida, have clearly established that a trial court's dismissal of a derivative action will be reviewed by an appellate court as a mixed question of fact and law. In *Einhorn* v. *Culea*, 224 Wis. 2d 856, 870, 591 N.W.2d 908 (App. 1999) rev'd on other grounds, 235 Wis. 2d 646, 612 N.W.2d 78 (2000), the Wisconsin Court of Appeals held that "[w]hether the trial court properly found that the [committee] was independent within the meaning of [the statute] presents a mixed question of fact and law." The Florida Court of Appeals similarly concluded that a mixed standard of review is appropriate. *Batur* v. *Signature Properties of Northwest Fla., Inc.*, 903 So. 2d 985, 994–95 (Fla. App. 2005).

It is well settled that mixed questions of fact and law are subject to plenary review by this court. "[S]o-called mixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations, are not facts in this sense . . . . [Such

questions require] plenary review by this court unfettered by the clearly erroneous standard. . . . When legal conclusions of the trial court are challenged on appeal, we must decide whether [those] . . . conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *D'Appollonio* v. *Griffo-Brandao*, 138 Conn. App. 304, 323–24, 53 A.3d 1013 (2012).

Having determined the appropriate standard of review, we now turn to the merits of the plaintiff's claim that the trial court erred by granting the defendants' motion to dismiss. In resolving the plaintiff's claim, the first issue is whether the court erred in determining that a majority of the board consisted of qualified directors.

Subsection (a) of § 33-724 requires courts to dismiss a derivative proceeding if a majority vote of qualified directors constituting a quorum, or a committee appointed by qualified directors, determined in good faith, after conducting a reasonable inquiry upon which its conclusions are based, that the maintenance of a derivative proceeding is not in the best interests of the corporation. A qualified director is defined in General Statutes § 33-605 (a) (1)[10] as one who "does not have (A) a material interest in the outcome of the proceeding, or (B) a material relationship with a person who has such an interest . . . ." Regarding actions taken under § 33-724, § 33-605 (c) (3) also provides that a director's "status as a named defendant, as a director against whom action is demanded or as a director who approved the conduct being challenged," *shall not by itself* prevent that director from being qualified. A director has a material relationship if "a familial, financial, professional or employment relationship . . . would reasonably be expected to impair the objectivity of the

[10] General Statutes § 33-605 is derived from § 1.43 of the model act. Model Business Corporation Act, supra, § 1.43, pp. 1-39 through 1-44.

director's judgment when participating in the action to be taken . . . ." General Statutes § 33-605 (b) (1). A director has a material interest if he or she has "an actual or potential benefit or detriment, other than one which would devolve on the corporation or shareholders generally, that would reasonably be expected to impair the objectivity of the director's judgment when participating in the action to be taken."[11] General Statutes § 33-605 (b) (2).

Additionally, § 33-724 (c) imposes a heightened pleading standard on all plaintiffs filing a shareholder derivative action after the board of directors has rejected their demands, thus requiring the plaintiffs to allege, *with particularity*, facts showing either (1) that the directors were not qualified *or* (2) that the factors of subsection (a) were not met.[12] The official comment to

---

[11] The official comment to § 1.43 of the model act further develops the definition of material interest, explaining that "[w]hether a director has a material interest in the outcome of a proceeding . . . lie[s] along a spectrum. At one end of the spectrum, if a claim against a director is *clearly frivolous or is not supported by particularized and well-pleaded facts*, the director should not be deemed to have a material interest in the outcome of the proceeding . . . even though the director is named as a defendant. At the other end of the spectrum, a director normally should be deemed to have a material interest . . . if a claim against the director is supported by particularized and well-pleaded facts which, if true, would be likely to give rise to a significant adverse outcome against the director." (Emphasis added; internal quotation marks omitted.) Model Business Corporation Act, supra, § 1.43, official comment, pp. 1-41 through 1-42.

[12] Because the plaintiff in the present case filed a complaint after the board rejected its demand, the heightened pleading standard in § 33-724 (c) applies. In its memorandum of decision, the court applied this standard when it concluded that the plaintiff failed to allege the requisite particularized facts to prove that the directors were not qualified. This conclusion raises the ancillary issue of whether the reference to subsection (a) contained in subsection (c) requires a plaintiff to allege particularized facts regarding all three elements (i.e., qualified, good faith and reasonable inquiry) set forth therein.

If subsection (c) is read to require the plaintiff to plead with particularity each of the three elements set forth in subsection (a)—namely, (1) qualified decision makers, (2) good faith and (3) a reasonable inquiry—then the alternative phrasing in subsection (c) becomes confusing. Indeed, if subsec-

§ 7.44 of the model act further explains that "[s]ubsection (c) . . . assigns to the plaintiff the *threshold burden of alleging facts* establishing that the majority of the directors on the board are not qualified." (Emphasis added.) Model Business Corporation Act, supra, § 7.44, official comment, p. 7-75. Accordingly, the plaintiff in this case must not only plead that the directors are not qualified due to a material interest or material relationship, but must also plead these allegations with *factual particularity.* General Statutes §§ 33-605 and 33-724 (c). This is a standard more demanding than mere notice pleading.[13]

tion (c) requires the plaintiff to allege with particularity that the directors are not qualified in both instances, the "or" is rendered superfluous. We think that this cannot be the intended result. "See General Statutes § 1-1 (a) ('[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly')." *Bhatia* v. *Debek,* 287 Conn. 397, 416, 948 A.2d 1009 (2008).

We therefore conclude that subsection (c) should be construed to provide that the plaintiff must particularly plead *either* (1) that the directors are not qualified *or* (2) that *only* the lack of good faith and reasonable inquiry components of subsection (a) are not satisfied, and not whether the directors are qualified. This interpretation comports with the official comment to § 7.44 of the model act, which indicates that in order to state a cause of action after the board rejects a shareholder's demand, subsection (c) requires the plaintiff to allege with particularity facts showing *either* that the directors are not qualified *or, alternatively,* that the determination *made by qualified directors* does not meet the standards of *good faith and reasonable inquiry* set forth in subsection (a). Accordingly, the model act presumes in the latter instance that the directors are qualified and, thus, subsection (a) refers solely to the good faith and reasonable inquiry components. Model Business Corporation Act, supra, § 7.44, official comment, pp. 7-74 through 7-75.

[13] The pleading requirements set forth in § 7.44 (c) of the model act are analogous to those established by Delaware law. Model Business Corporation Act, supra, § 7.44, official comment, p. 7-75. In *Brehm* v. *Eisner,* 746 A.2d 244 (Del. 2000), the Delaware Supreme Court, discussing shareholders who sought to circumvent the demand requirement, set forth the requirements of the particularity standard. The court concluded that the "pleadings must comply with stringent requirements of *factual particularity* [and therefore] differ substantially from [other] permissive notice pleadings . . . . [T]he pleader must set forth . . . particularized factual statements that are essential to the claim. . . . A prolix complaint larded with conclusory lan-

The court's determination of whether the directors are qualified then triggers the application of subsection (d) of § 33-724, which allocates the burden of proving or disproving the elements of subsection (a) to either the plaintiff or the corporation based on that determination. As a result, if the court were to determine that a majority of the board consisted of qualified directors, then the plaintiff would have the burden of proving the *absence* of good faith and a reasonable inquiry. Conversely, if the court were to determine that the majority of the board did not consist of qualified directors, then the corporation would bear the burden of proving the *existence* of good faith and a reasonable inquiry. General Statutes § 33-724 (d). The court's determination as to whether the directors are qualified is, therefore, the threshold issue, and its resolution is essential to analyzing every other aspect of the statute.[14]

Applying the aforementioned standards, the court concluded that the defendant, Alan Kaufman and Amazeen were qualified directors who satisfied the quorum requirement. The court reasoned that the plaintiff failed to make particularized allegations necessary to overcome the heightened pleading standard set forth in § 33-724 (c). We agree. The following additional facts are necessary to our resolution of this issue.

---

guage . . . does not comply with these fundamental pleading mandates." (Emphasis added.) Id., 254. Because subsection (c) of our statute is identical to § 7.44 (c) of the model act, we find the fundamental principles set forth in *Brehm* illustrative for our purposes.

[14] In so concluding, we find it persuasive that the United States Court of Appeals for the Second Circuit reached this same outcome when interpreting a Massachusetts statute with language substantially similar to § 33-724. In *Halebian v. Berv*, supra, 644 F.3d 122, the court concluded that "the existence of a good-faith, reasonable inquiry into the corporation's best interests . . . is subject to the burden-shifting provisions . . . . However, that such burden-shifting turns on the independence of the decision maker unambiguously demonstrates that the court's evaluation of independence is a *prerequisite* to the operation of the dismissal statute *in toto*." (Citation omitted; emphasis altered.) Id., 128. Although our statute characterizes a director's disinterestedness in the transaction as "qualified" rather than "independent," this

The plaintiff alleged in its complaint that the directors were not disinterested in the transaction. Specifically, the plaintiff alleged that "[d]irectors [Alan] Kaufman and Amazeen, who together with [the defendant], control the Keystone Board of Directors, had full knowledge, or acted in reckless disregard of the actions taken by [the defendant] addressed in this Complaint, and are not in a position to dispassionately determine whether the instant litigation is in the best interests of Keystone." We hold that this conclusory allegation is insufficient to meet the particularity standard required of the plaintiff. General Statutes § 33-724 (c); see also *Brehm* v. *Eisner*, 746 A.2d 244, 254 (Del. 2000).

In its memorandum of decision, the court held that although the plaintiff alleged that the defendant's actions exposed Keystone to considerable risks, "[the plaintiff ultimately failed to] establish that the defendant ha[d] a material interest in the litigation because these allegations [were] not supported by *particularized and well-pleaded facts* that, if true, would likely give rise to a significant adverse outcome against the defendant." (Emphasis added.) The court observed that the complaint was bare of any "indication or discussion of [damages the corporation suffered or] whether any of the third party lenders have [actually] sued the defendant for his actions. Moreover, a director cannot be disqualified merely because of his status as a named defendant."

The court also determined that both Amazeen and Alan Kaufman were qualified directors, reasoning that they were not named defendants in the present action, and that neither had a material interest in the outcome of the proceeding or a material relationship with a person who has such an interest. Accordingly, the court

terminological distinction has no bearing on our analysis and conclusion for these purposes.

found that "the quorum requirement was met because three of the four directors were qualified directors for purposes of § 33-724."

The plaintiff challenges this determination on appeal, contending that the defendant was not qualified because he had a material interest. Specifically, by rejecting the plaintiff's demands, the defendant stood to escape civil liability and gain continued employment as a corporate officer. The plaintiff also asserts that Alan Kaufman's familial relationship with the defendant is a material relationship, while Amazeen's reliance on Alan Kaufman and the defendant for her continued employment as a director impairs her objectivity. The plaintiff finally claims that both Alan Kaufman and Amazeen demonstrated a lack of objectivity by rejecting the plaintiff's demands even though they were aware of the defendant's transgressions. We are not persuaded.

These specific allegations did not appear on the face of the plaintiff's complaint. Instead the plaintiff alleged only that the directors knew or disregarded the defendant's misdeeds and therefore were not "in a position to dispassionately determine whether the instant litigation is in the best interests of Keystone." For the reasons discussed previously, we conclude that the allegations in the plaintiff's complaint were insufficient to meet the pleading requirements of § 33-724 (c). Accordingly, the court properly found that the directors were qualified within the meaning of § 33-605.[15]

II

Because we conclude that a majority of directors constituting a quorum were qualified, we next address

[15] The court noted that it need not reach the issue of whether Hammock was a qualified director because the quorum requirement had already been met. Nevertheless, the court concluded that Hammock was not qualified because he had a material relationship with the plaintiff as its designated director. Because we affirm the judgment of the trial court concluding that the defendant, Alan Kaufman and Amazeen were qualified, we need not reach this issue.

whether the trial court erred in holding that the plaintiff failed to meet its burden of proving that the board did not satisfy the elements set forth in § 33-724 (a).[16] Specifically, we must determine whether the plaintiff met its burden of proving that the board did not reach its decision in good faith after conducting a reasonable inquiry upon which its conclusions were based.

The following additional facts are necessary to our resolution of this issue. The board's report described the inquiry upon which its determination was made. The report provides that the board first reviewed the facts and circumstances related to the lawsuit.[17] The board then determined the scope of its inquiry and whether it had sufficient knowledge and information to make a determination. In reviewing the complaint, the board concluded that the relevant issues were the propriety of the certifications executed by the defendant, the risk of liability for false certification, and whether the defendant's actions constituted a breach of his fiduciary duties of loyalty and care. The board

---

[16] We need not address whether the plaintiff's complaint alleged with the requisite factual particularity that the board did not reach its decision in good faith after conducting a reasonable inquiry. That issue was never raised before—or decided by—the trial court, and the parties have not briefed it on appeal. This court cannot decide the case before it on a basis that the parties did not raise or brief. See *Sabrowski* v. *Sabrowski*, 282 Conn. 556, 560, 923 A.2d 686 (2007). Rather, we will decide this issue on the grounds relied upon by the trial court and briefed by the parties, and accordingly we will look beyond the factual allegations of the complaint in determining whether the plaintiff met its burden as to its claim that there was no good faith determination that the derivative proceeding was not in the best interests of the corporation.

[17] The report indicates that the board reviewed the plaintiff's summons and complaint; relevant board and stockholder meeting minutes; relevant certifications of corporate resolutions delivered to third party lenders; correspondence from the plaintiff's counsel dated August 6, September 10, and November 12 and 22, 2010; various discussions with the plaintiff regarding its desire to be paid dividends or have its stock redeemed by Keystone; financial statements for the year ending December 31, 2010; and the likelihood of the lawsuit's success compared to its costs and other consequences.

found that the facts relevant to these issues, involving corporate management and lending relationships, were within the purview, knowledge and experience of the board. Accordingly, the board determined that it could render a decision on the issues with the assistance of counsel.

The board further concluded in its report that maintaining the derivative action was not in Keystone's best interests for the following reasons. First, the board considered the lawsuit to have a small likelihood of success because the corporation had sustained no damages, and any defects in the certifications were cured when the stockholders ratified the actions of the officers. Second, the board observed that continuing the lawsuit would likely involve expenses for the corporation such as legal fees or indemnification expenses.[18] Third, the board considered that a change in leadership resulting from the defendant's dismissal could jeopardize the corporation's healthy financial status. Additionally, the board concluded that a lawsuit may have a negative impact on its lending relationships with financial institutions that received the certifications by calling attention to the defendant's alleged fraudulent behavior. Finally, the board determined that the plaintiff had a greater material interest in the outcome of the lawsuit than the corporation, as the sole preferred shareholder, and, therefore, it would be inappropriate to expend corporate resources to serve interests other than Keystone's.

The defendant submitted his affidavit and the affidavits of Amazeen and Alan Kaufman in support of the motion to dismiss. Each of the directors averred that they "[r]eviewed, participated in or otherwise had personal knowledge of the facts and circumstances related

---

[18] During the March 15, 2011 board meeting, the defendant noted that the lawsuit had already cost Keystone "$69,000 with the reality of more [expenses] in the future."

to the Sojitz lawsuit, including [those set forth in] the [f]indings and [d]etermination . . . ." The defendant and Amazeen stated in their respective affidavits that the board has met forty-three times since Keystone's incorporation in 2000 and at almost half of these meetings the board had reviewed the credit facilities and considered the corporation's needs for financing and amendment of interest rates. The defendant and Amazeen further stated that Hammock received the same information and opportunity to participate as the other board members.

The plaintiff submitted Hammock's affidavit in support of its opposition to the defendants' motion to dismiss.[19] In his affidavit, Hammock averred that the defendant stated that without Keystone's bank lines the company cannot do business. Hammock also stated that one bank decreased Keystone's credit line, but that the reduction did not create any corresponding savings for Keystone.[20] According to Hammock, inspection of corporate documents revealed that the defendant had executed and delivered false certifications to various financial institutions, and that the board did not meet on the dates specified in the certifications to adopt the necessary resolutions.

The court, in its memorandum of decision, concluded that the plaintiff failed to meet its burden of proving that the board did not reach its conclusion in good faith

[19] In his affidavit, Hammock averred that he is employed by the plaintiff as its vice president and serves as the plaintiff's representative on Keystone's board of directors.

[20] In a July 6, 2010 letter to the plaintiff, the defendant stated that "Keystone's bank lines are our life line; without bank lines, we cannot do business." The letter further alleged that the plaintiff endeavored to cause hardship to Keystone by refusing to approve meeting minutes and the 2010 budget as well as refusing to increase staff bonuses and salaries. The letter concluded by withdrawing Keystone's offer to repurchase the plaintiff's stock, stating that Keystone will reserve its cash whenever possible and accrue dividends on the plaintiff's preferred stock instead of paying them.

pursuant to a reasonable inquiry. Specifically, the court found that the board and its counsel examined the relevant facts and circumstances pertaining to the plaintiff's lawsuit, analyzed the board's findings and determined that the maintenance of the action was not in Keystone's best interests. The court found, for example, that "it was logical for the board to conclude that prosecution of the lawsuit would likely involve expense . . . where the lawsuit had already cost the company $69,000." The court held that it "must defer to the board's determination because there is some support for it." (Internal quotation marks omitted.)

The plaintiff claims that the court erred by giving judicial deference to the board's decision.[21] Specifically, the plaintiff contends that the function of the trial court was to undertake a vigorous analysis of the process that led to the board's determination. We are not persuaded and conclude that § 33-724 operates as a statutory embodiment of the business judgment rule,[22] which

[21] We agree in part with the plaintiff's assertion that dismissal is available only if the statutory predicates exist. A dismissal is warranted when the elements set forth in subsection (a) of § 33-724 are present. These elements are, however, subject to the burden shifting provisions in subsection (d). The plaintiff, in the case at bar, bears the burden of proving the nonexistence of these elements. When the plaintiff bears the burden of proof, a presumption arises that the statutory elements have been satisfied by the group rendering the determination. Accordingly, dismissal is proper in the present case unless the plaintiff meets its burden of proving that the board failed to make a good faith determination after conducting a reasonable inquiry. General Statutes § 33-724 (d).

[22] Our Supreme Court has previously interpreted the breadth of the business judgment rule in *Rosenfield* v. *Metals Selling Corp.*, 229 Conn. 771, 643 A.2d 1253 (1994). "[T]he business judgment doctrine [is] a rule of law that insulates business decisions from most forms of review. Courts recognize that managers have both better information and better incentives than they. . . . The business judgment rule expresses a sensible policy of judicial noninterference with business decisions . . . . Shareholders challenging the wisdom of a business decision taken by management must overcome the business judgment rule." (Citations omitted; internal quotation marks omitted.) Id., 786–87.

restricts our review of a corporate manager's decision. This conclusion is supported by the United States District Court for the District of Connecticut, which held in construing § 33-724, that "[t]he policy reason for this limited review is that a corporation should be free to determine in its own business judgment whether litigation is in its best interest, free from unnecessary interference." *Frank* v. *LoVetere*, supra, 363 F. Sup. 2d 335.[23]

Bearing that in mind, the next issue we must address is whether the trial court properly found that the plaintiff did not meet its burden of proving that the board failed to conduct a good faith, reasonable inquiry. Section 33-724 (a) requires the specified group to render a determination made in good faith after conducting a reasonable inquiry. What constitutes a reasonable inquiry will vary with the circumstances in each case. The official comment to § 7.44 explains that the word inquiry has been used, rather than investigation, to "make it clear that the scope of the inquiry will depend upon the issues raised and the knowledge of the group making the determination with respect to those issues. In some cases, the issues may be so simple or the knowledge of the group so extensive that little additional inquiry is required. In other cases, the group may need to engage counsel and possibly other professionals to make an investigation and assist the group in its evaluation of the issues." Model Business Corporation Act, supra, § 7.44, official comment, p. 7-74.

The plaintiff first asserts that the board's inquiry was unreasonable because the board failed to conduct any inquiry at all and instead delegated the task entirely to the defendant's personal attorney. The record belies this assertion. Because the inquiry varies according to

---

[23] We find it persuasive that other jurisdictions have reached the same conclusion. See, e.g., *Madvig* v. *Gaither*, 461 F. Sup. 2d 398, 408–409 (W.D.N.C. 2006); *Halebian* v. *Berv*, 457 Mass. 620, 627 n.11, 931 N.E.2d 986 (2010).

the board's knowledge and the issues raised, the board must determine the scope of its inquiry. In this case, the record indicates that the board engaged counsel for assistance in evaluating the nature of the plaintiff's lawsuit after concluding that the issues raised by the plaintiff's allegations involved corporate management and lending relationships and were thus within the purview, knowledge and experience of the board. Each of the board members received a draft of the attorney's report prior to its adoption at the March 15, 2011 meeting. Furthermore, the board members who voted to adopt the report averred in their affidavits that they were aware of the facts and circumstances pertaining to the plaintiff's demands when they rendered their decision. Indeed, the report provides a list of the relevant documents and considerations that the board reviewed before reaching its conclusion.

The plaintiff also argues that the inquiry was unreasonable, as neither the board nor the attorney conducted any interviews, examined any of the relevant bank documents or certifications, or considered the impact of the defendant's alleged misconduct. These assertions are unavailing for two reasons. First, the board in this case need not interview witnesses and review the relevant bank documents to determine the consequences of the defendant's alleged transgressions because the board accepted these allegations as true when it conducted its inquiry and reached its conclusion. Operating under this presumption, the board concluded that maintaining the litigation was not in Keystone's best interests because of the lack of damages, the litigation expense, the risk to lending relationships, and the fact that further loss of corporate management outweighed the consequences flowing from the defendant's presumed breaches of fiduciary duty and fraudulent acts.

Second, the board need not take any specific measures in the course of its inquiry, but instead must engage only in a *reasonable inquiry*, which varies according to the board's knowledge and the issues at hand.[24] In the present case, the board concluded that it had sufficient knowledge and information and rendered its determination after reviewing the relevant facts and circumstances, including the complaint, meeting minutes, certifications of corporate resolutions delivered to lenders, various correspondence with the plaintiff's counsel, financial statements, and the likelihood of the lawsuit's success. On the basis of the foregoing, we conclude that the plaintiff has not met its burden of proving that the board's inquiry was unreasonable.[25]

The plaintiff finally asserts that the board's conclusions were based on improper considerations. We disagree. Section 33-724 (a) provides that the board's conclusions must be based on its inquiry. The official comment to § 7.44 of the model act, from which our statute was derived, further explains that "[the statute] requires that the inquiry and the conclusions *follow logically*. This standard authorizes the court to examine

---

[24] Moreover, the plaintiff has not provided us with any contrary authority to support the imposition of additional requirements. Instead, we find more persuasive the court's conclusion in *Frank* v. *LoVetere*, supra, 363 F. Sup. 2d 336. In that case, the plaintiff also argued that the committee's inquiry was unreasonable because the committee failed to review documents and to conduct an independent financial analysis. The court, however, concluded that no such independent analysis was required, noting that the plaintiff provided "no authority or policy reason why it would be unreasonable as a matter of law for the [committee] to rely on [the knowledge of a corporate official]." Id., 337.

[25] The plaintiff also claims that the law firm preparing the findings and determination report represented the defendant in his personal capacity. This dual representation, according to the plaintiff, presented a conflict sufficient to taint the board's entire inquiry such that it was neither reasonable nor in good faith. We are not persuaded. We agree with the trial court that this presents a question as to the attorney's conflicts for purposes of his withdrawal and conclude that it is not relevant to our analysis regarding the reasonableness of the board's inquiry in the case at bar.

the determination to ensure that it has *some support* in the findings of the inquiry." (Emphasis added.) Model Business Corporation Act, supra, § 7.44, official comment, p. 7-74. Good faith and reasonableness "[create] a floor below which the board's actions and procedures cannot fall to be considered reasonably acceptable under the business judgment rule. Thus [the plaintiff's] burden here is not just to show that the . . . inquiry and report were flawed, or that someone else might have reached a different conclusion, but that the . . . inquiry and conclusions [do not] follow logically." (Internal quotation marks omitted.) *Frank* v. *LoVetere,* supra, 363 F. Sup. 2d 335. Accordingly, the court may conduct a limited review into the board's conclusions to determine that they follow logically from the inquiry, but may not scrutinize the reasonableness of its determination.[26]

Although the plaintiff invites us to examine the propriety of the board's considerations, we decline to do so. The factors that the board takes into consideration as part of its inquiry are properly left within the board's discretion, subject only to the good faith and reasonableness requirements. In the present case, the board determined that the lawsuit would have a low likelihood of success, that the corporation had not yet suffered any damages, that such litigation may cause further damage by alerting lenders to the deficiencies in the certifications and that current legal expenses were $69,000 with a likelihood of more in the future. Such considerations are relevant to the inquiry of whether to continue with the litigation, and we agree with the trial court that the board's conclusion not to maintain the plaintiff's lawsuit follows logically from the aforementioned findings. Because the plaintiff has failed to meet its burden of proving that the board's inquiry and conclusions do not follow logically, we conclude that

---

[26] See footnote 4 of this opinion.

510

the court did not err in granting the defendants' motion to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.