# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-00260-SCT

*WILLIAM BURGESS, DERIVATIVELY ON
BEHALF OF BANCORPSOUTH, INC.*

*v.*

*AUBREY B. PATTERSON, HASSELL H.
FRANKLIN, JAMES VIRGIL KELLEY, TURNER
O. LASHLEE, ROBERT C. NOLAN, ALAN W.
PERRY, JAMES E. CAMPBELL, III, WILBERT G.
HOLLIMAN, JR., LARRY G. KIRK, GUY W.
MITCHELL, III, WILLIAM CAL PARTEE, JR.,
WARREN A. HOOD, JR., WILLIAM L. PRATER,
GREGG COWSERT AND BANCORPSOUTH, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/30/2014 |
| TRIAL JUDGE: | HON. WILLIAM R. BARNETT |
| TRIAL COURT ATTORNEYS: | DAVID M. McMULLAN, JR. |
| | KIP BRIAN SHUMAN |
| | RUSTY E. GLENN |
| | ROBERT B. WEISER |
| | BRETT D. STECKER |
| | JAMES M. FICARO |
| | JEFFREY J. CIARLANTO |
| | JOSEPH M. PROFY |
| | JAMES PATRICK CALDWELL |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DAVID M. McMULLAN, JR. |
| | KIP BRIAN SHUMAN |
| | RUSTY E. GLENN |
| | ROBERT B. WEISER |
| | BRETT D. STECKER |
| | JAMES M. FICARO |
| ATTORNEYS FOR APPELLEES: | JAMES PATRICK CALDWELL |
| | KEVIN B. SMITH |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 04/14/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., KITCHENS AND COLEMAN, JJ.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     William Burgess, a common stock shareholder of BancorpSouth, Inc., filed a shareholder derivative action in the Circuit Court of Lee County after a Special Committee comprised of BancorpSouth directors and officers rejected his presuit demand. Burgess, in his presuit demand and in his Shareholder Derivative Complaint, made various claims relating to alleged misrepresentations in company publications directed to shareholders following the 2008 economic downturn. Ultimately, the Circuit Court of Lee County dismissed the action. For the reasons stated below, we now affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Burgess sent a shareholder demand pursuant to Mississippi Code Section 79-4-7.42[1] on June 2, 2010, requesting that "BancorpSouth's Board of Directors . . . take actions to remedy breaches of fiduciary duties from July 2009 to the present . . . by certain current and/or former directors and executive officers of the Company . . . ."[2] Burgess claimed that corporate management, in the wake of the 2008 economic downturn, had "caused

---

[1] Mississippi Code Section 79-4-7.42 provides, in pertinent part that "[n]o shareholder may commence a derivative proceeding until . . . [a] written demand has been made upon the corporation to take suitable action . . . ." Miss. Code Ann. § 79-4-7.42 (Rev. 2013).

[2] Burgess specifically named the following BancorpSouth directors and officers in his presuit demand: Aubrey B. Patterson, Jr., Hassell H. Franklin, William L. Prater, James E. Campbell, III, Wilbert G. Holliman, James Virgil Kelley, Larry G. Kirk, Turner O. Lashlee, Guy W. Mitchell, III, Robert Madison Murphy, Robert C. Nolan, William Cal Partee, Jr., and Alan W. Perry.

BancorpSouth to issue a series of materially false and misleading statements regarding the Company's business and financial results." More specifically, Burgess claimed that management had "failed to disclose the extent of seriously delinquent commercial real estate loans and construction and land loans" and had "also failed to ensure that the Company adequately and timely recorded losses for its impaired loans, which in turn caused BancorpSouth's financial statements to be materially false and misleading."

¶3.    Burgess's demand cited various press releases from 2009 and early 2010 in which BancorpSouth had touted its vigorous financial health. But then, on February 25, 2010, management announced a delay in the filing of BancorpSouth's Annual Report on Form 10-K with the Securities and Exchange Commission (SEC).

¶4.    Burgess claimed that management's "material misrepresentations and gross mismanagement of the Company" caused BancorpSouth to sustain damages. Burgess stated that management had "authorized, caused, or permitted BancorpSouth to issue false and misleading financial results for fiscal year 2009" and that management had:

> [A]uthorized, caused or permitted BancorpSouth to conduct its business in an unsafe, imprudent and dangerous manner by pursuing unsound practices, including financial disclosure, allowance for credit losses and financial oversight, and the serious and adverse impact of these practices on BancorpSouth's finances and financial condition and prospects. In addition, they permitted BancorpSouth to falsify its statements to the public to try to conceal the true nature of its problems.

Based on his allegations of corporate management malfeasance, Burgess demanded that the BancorpSouth Board of Directors (the Board) conduct an internal investigation into "BancorpSouth's violations of Mississippi and/or federal law" and "commence a civil action

3

against each member of management to recover for the benefit of the Company the amount of damages sustained by the Company as a result of their breaches of fiduciary duties . . . ."

¶5.    On June 30, 2010, the Board delegated to a Special Committee "the full authority and responsibility for determining whether it is in the Company's best interest to pursue any of the claims asserted" by Burgess in his demand. The Board appointed and unanimously approved Hassell H. Franklin, Wilbert G. Holliman, and Guy W. Mitchell, III, as qualified directors to serve on the Special Committee. By letter dated July 2, 2010, Burgess was notified that the Special Committee had been formed for the purpose of evaluating his claims. On July 15, 2010, Stephen L. Thomas of the law firm of Bradley Arant Boult Cummings, LLP, informed Burgess that his firm had been "retained as independent counsel to aid a recently created Special Committee . . . composed of qualified, disinterested Directors of BancorpSouth, Inc. to conduct an inquiry into the allegations" of the demand.

¶6.    The Special Committee, "having conducted a good faith, adequate, and reasonable inquiry into the allegations and claims" raised in Burgess's demand, determined "for and on behalf of the Board that, based upon its inquiry, the maintenance of the derivative proceeding . . . is not in the best interests of the Company." Thomas notified Burgess and his counsel, in a letter dated August 27, 2010, that this determination had been made.

¶7.    Aggrieved by the Special Committee's refusal to initiate derivative proceedings, Burgess, on August 16, 2011, filed a Shareholder Derivative Complaint in the Circuit Court of Lee County. In addition to naming BancorpSouth, Inc., as a defendant, Burgess also named "certain current and/or former members of its Board of Directors . . . and executive

4

officers," including Aubrey B. Patterson, Hassell H. Franklin, James Virgil Kelley, Turner O. Lashlee, Alan W. Perry, James E. Campbell, III, Wilbert G. Holliman, Jr., Larry G. Kirk, Guy W. Mitchell, III, William Cal Partee, Jr., Warren A. Hood, Jr., William L. Prater, and Gregg Cowsert.

¶8. Burgess claimed that the Special Committee improperly had rejected his demand. He stated that the investigation was "perfunctory and inadequate," because the Special Committee had "performed their entire purported 'investigation' in little more than a month (in the middle of summer), start to finish." He claimed that the Special Committee members lacked independence because they "are individuals that have developed longstanding professional relationships with each other and with whom they have entangling financial alliances, interests, and dependencies . . . ." Burgess continued that "the members of the Special Committee have benefited [sic], and will continue to benefit, from the wrongdoing alleged herein and have engaged in such conduct to preserve their positions of control and the perquisites derived thereof, and are incapable of exercising independent judgment in deciding whether to bring this action." Burgess described the Special Committee investigation as having been a "sham, mere window dressing as no true independent investigation of the Company's myriad financial reporting, accounting, and internal control issues could have possibly been completed in a month's time."

¶9. In terms of substantive claims, Burgess first alleged that the defendants had "violated their fiduciary duties of care, loyalty, and good faith by causing or allowing the Company to disseminate to BancorpSouth shareholders materially misleading and inaccurate information

5

through, *inter alia*, BancorpSouth filings and other public statements and disclosures . . . ." Second, he claimed that Defendants had "willfully ignored the obvious and pervasive problems with BancorpSouth's internal controls practices and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence." Third, Burgess claimed that Defendants had "violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision," and such breach caused "significant damages, not only monetarily, but also to corporate image and goodwill."

¶10. Fourth, Burgess alleged that "[w]hen informed of a material event such as the opening of an investigation by the SEC, Defendants had a duty to disclose that information to the public" and their failure to do so had caused monetary damages and damage to "corporate image and goodwill." Fifth, Burgess claimed that Defendants had been unjustly enriched by their malfeasance. Finally, Burgess alleged that "Director Defendants, by allowing the Officer Defendants to retain all of their incentive compensation from FY09 which was based upon materially false and misleading financial statements, have given away corporate assets without cause."

¶11. Burgess sought a judgment "in favor of the Company for the amount of damages sustained . . . as a result of the Defendants' breaches of fiduciary duties." He asked that BancorpSouth be directed to "take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders . . . ." He requested that the court grant restitution and "disgorgement of all profits, benefits and other compensation obtained by the Defendants"

6

and that the court grant "costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses."

¶12.    On October 25, 2011, First Circuit Court District judges, Hon. Thomas J. Gardner, III, Hon. Paul S. Funderburk, Hon. Jim S. Pounds, and Hon. James L. Roberts, Jr., recused, one of the defendants being a practicing member of the Bar of that district. Chief Justice William L. Waller, Jr., appointed Hon. William R. Barnett to preside over the matter as a special judge. On December 20, 2011, a stay was entered "pending certain activities in litigation involving related factual issues . . . pending in another forum."[3]

¶13.    After the stay was lifted November 19, 2012, the defendants, on November 30, 2012, filed a motion to dismiss, in which they stated that:

> Having chosen to investigate the Shareholder's allegations, and having assembled a Special Committee of qualified directors, having employed counsel and a corporate law expert, and said Committee having determined in good faith, after conducting a reasonable inquiry on which its conclusions were based that the maintenance of the derivative proceeding was not in the best interest of the corporation, Mississippi law compels that this derivative proceeding "*shall be dismissed* by the court on motion by the corporation."

(quoting Miss. Code Ann. § 79-4-7.44(a) (Rev. 2013)) (emphasis added by BancorpSouth).

The defendants took the position that, because the Special Committee had determined that

---

[3]Burgess noted that on May 12, 2010, a federal class action lawsuit was instituted against BancorpSouth officers and directors by shareholders on behalf of the company in the United States District Court for the Middle District of Tennessee. The shareholders alleged that the officers and directors had committed various violations of the 1934 Securities and Exchange Act. When the defendants moved to dismiss the complaint, a magistrate judge submitted a report and recommendation to the assigned district judge, Hon. William J. Haynes. The report and recommendation stated that the plaintiff's allegations had been sufficient to support a claim for federal securities law violations. Ultimately, the parties settled the case.

a derivative suit was not in the best interests of the corporation, and because of the "shall be dismissed" language of Mississippi Code Section 79-4-7.44, the Special Committee's "determination is not subject to judicial challenge here."

¶14. The defendants stated that, while Burgess bore the "burden of pleading particularized facts that cast reasonable doubt as to the Special Committee's independence or the sufficiency of its inquiry," Burgess had failed to do so. The defendants responded to Burgess's allegations of "disabling conflicts" by stating that Mitchell's fees had been *de minimis* and that the relationship between Mitchell and BancorpSouth had been disclosed to shareholders. To that effect, the defendants attached a proxy statement from March 2011 in which Mitchell was listed, with biography, as a nominee for election by shareholders to the BancorpSouth Board of Directors. The defendants also discounted the alleged disabling conflicts of Holliman and Franklin. The defendants mentioned a report prepared by the Special Committee and stated that "[t]his Report is subject to the attorney-client privilege between the Committee and its counsel, and constitutes the work-product of Bradley-Arant," thus the "Report has therefore not been shared with non-Committee BancorpSouth directors or management, and certainly not Burgess or his counsel."

¶15. Attached to the Motion to Dismiss were three affidavits. The first affidavit was from attorney Stephen Thomas, who had been retained to assist the Special Committee to conduct its inquiry into Burgess's demand. Thomas stated that, prior to the Special Committee's statutory investigation, he had conducted "independence interviews with the Committee members to confirm their suitability to sit on the Committee" and that, in addition, he "had

8

the Committee itself conduct an independence interview with counsel to determine the independence of Bradley Arant Boult Cummings LLP." Additionally, Thomas stated that the Committee had retained the services of Mississippi College School of Law Professor Cecile C. Edwards as an expert in the field of corporate law, who "provided the Committee with assistance in its investigation and preparation" of its report.

¶16.    Thomas reported that, except for Burgess's demand letter of June 2, 2010, Burgess and his counsel offered no input to aid in the Special Committee's investigation, despite multiple written requests that he share any documents, information, and authorities which he or his counsel deemed helpful to the Committee's investigation. Thomas stated also that the Special Committee's 25-page report constituted work product and was, therefore, subject to the attorney-client privilege. He concluded that, "[h]aving conducted a full, fair, and reasonable investigation, the Committee unanimously concluded that it was not in the best interests of the Company to prosecute the claims asserted in the Demand" because, in addition to no legal support having been found to support Burgess's allegations, "the direct and indirect litigation costs would outweigh the potential recoverable damages to the Company."

¶17.    A second affidavit attached to the Motion to Dismiss was from Guy W. Mitchell, III, one of the members of the Special Committee. Mitchell, like Thomas, explained the scope of the Committee's review, described what the Committee had investigated, claimed that the Committee's report was subject to the attorney-client privilege, and concluded that prosecution of the claims asserted by Burgess was not in the company's best interests.

9

¶18. The third affidavit was from Professor Edwards, who stated that she and Thomas had aided the Special Committee in its determination of its own impartiality and independence. According to Professor Edwards, based on the impartiality determination, the Special Committee had determined that "its members were sufficiently independent and disinterested to serve as 'qualified directors' under Mississippi law, and to evaluate the allegations in the Demand in good faith, and to conduct an adequate and reasonable investigation of those allegations." Independence having been ascertained, the Special Committee, according to Professor Edwards, then conducted its investigation into the substance of Burgess's allegations and concluded that it was not in the company's best interests to prosecute.

¶19. On December 5, 2012, Burgess propounded a Request for Production of Documents upon BancorpSouth and the Special Committee. Among thirty-seven requests for documents relating to the Special Committee's independence and impartiality and its investigation of Burgess's derivative demand, Burgess sought "[a]ll documents created by the Special Committee in connection with the Demand" and "[a]ll documents relating to any findings, conclusions or recommendations of the Special Committee." The defendants responded with a motion for a protective order, arguing that no law permitted Burgess to obtain discovery or to supplement his complaint at the pleading stage prior to a ruling on the motion to dismiss.

¶20. Burgess filed a memorandum in opposition to the defendants' motion to dismiss, to which he attached sources purporting to show what he claimed were disabling conflicts. According to Burgess, the North Mississippi Medical Center webpage indicated that

Defendants Patterson, Franklin, Holliman, and Kelley served together on the board of directors of the North Mississippi Medical Center. The web page of the Community Development Foundation listed BancorpSouth as a "Circle Member." An article available on the web page of the Mississippi Economic Counsel entitled "BancorpSouth Selects James D. Rollins III as New Chief Executive Officer" from January 4, 2013, indicated that Patterson previously had served as Chairman of the Community Development Foundation. The web page of the Board of Directors of the Community Development Foundation indicated that Mitchell had served as one of its directors. Other allegedly disabling conflicts involved BancorpSouth board members' and Special Committee members' being members of and/or serving currently or previously on the boards of CREATE, Inc., the North East Mississippi United Way, North Mississippi Health Services, the Board of Trustees of State Institutions of Higher Learning (IHL Board), and the Tupelo Kiwanis Club.

¶21. Burgess also opposed the defendants' request for a protective order, arguing that he was entitled to discovery of "any and all information relating to the 'investigation' performed by the appointed 'Special Committee' of BancorpSouth's Board of Directors." In response, the defendants filed a Memorandum in Rebuttal to the Opposition to Defendants' Motion for Protective Order, to which they attached, for *in camera* review by the trial court, the report of the Special Committee. With regard to the content of the report, the defendants maintained their prior assertion of work-product and attorney-client privileges.

¶22. Special Judge Barnett granted the motion to dismiss on December 30, 2014. He held that "the Plaintiff's Complaint wholly fails to allege with particularity any facts (not

11

possibilities) which any reasonable person could construe that the Special Committee's members were somehow not qualified, that their inquiry was not reasonable and their conclusions not made in good faith." He rejected Burgess's argument that discovery was needed at the pleadings stage: "This Court finds that in derivative proceedings you must have a legally sufficient Complaint in order to conduct discovery."

¶23.    Aggrieved, Burgess appealed the judgment to this Court. Burgess claims that his complaint alleged with the requisite particularity facts establishing that the members of the Special Committee were not qualified under Mississippi Code Section 79-4-1.43 (Rev. 2013). He continued that the law imposes upon the defendant officers and directors the burden of proving that the determination that maintenance of the derivative proceeding was not in the best interests of the corporation was made independently and in good faith, following a reasonable inquiry under Mississippi Code Section 79-4-7.44 (Rev. 2013). He stated that, in this case, the Special Committee had not borne its burden of demonstrating its independence and that its investigation was performed in good faith, following a reasonable inquiry. Furthermore, Burgess argued that reports of the Special Committee, if any, must be produced to the plaintiff, that the circuit court erred in relying on the Special Committee's report, and that the circuit court erred by not allowing him further discovery.

¶24.    BancorpSouth maintains that Burgess failed to allege with particularity either that the board of directors was not qualified at the time the determination was made or that the determination was not made in good faith, following a reasonable inquiry and, thus, did not meet the requirements of Mississippi Code Section 79-4-7.44. Because, as BancorpSouth

12

claims, Burgess has failed to meet the threshold requirements of Section 79-4-7.44, BancorpSouth argues that the circuit court correctly dismissed Burgess's complaint and that the business judgment rule protected the determination of the Special Committee that the best interests of the corporation were not served by maintaining a derivative suit. BancorpSouth contends that no discovery was available to Burgess at the initial pleadings stage and maintains that the Special Committee's report was protected by the work-product and attorney-client privileges.

## STANDARD OF REVIEW

¶25.    As an initial matter, this Court never before has been called upon to review a circuit court's dismissal of a shareholder's derivative complaint under Mississippi Code Section 79-4-7.44. As an issue of first impression in this jurisdiction, this Court must assign a standard of review by which our appellate courts are to consider this and similar future cases.

¶26.    Mississippi Code Section 79-4-7.44 provides the following:

> (a) A derivative proceeding shall be dismissed by the court on motion by the corporation if one of the groups specified in subsection (b) or (f)[4] has determined in good faith, after conducting a reasonable inquiry upon which its conclusions are based, that the maintenance of the derivative proceeding is not in the best interests of the corporation.
>
> (b) Unless a panel is appointed pursuant to subsection (e), the determination in subsection (a) shall be made by:
>
> > (1) A majority vote of qualified directors present at a meeting of the board of directors if the qualified directors constitute a quorum; or

---

[4] No subsection (f) exists. Ostensibly, the statute refers to subsection (e), which permits the court to appoint a panel to make the best-interests determination, but that subsection is not at issue in the present appeal.

(2) A majority vote of a committee consisting of two (2) or more qualified directors appointed by majority vote of qualified directors present at a meeting of the board of directors, regardless of whether such qualified directors constitute a quorum.

(c) If a derivative proceeding is commenced after a determination has been made rejecting a demand by a shareholder, the complaint shall allege with particularity facts establishing either (1) that a majority of the board of directors did not consist of qualified directors at the time the determination was made or (2) that the requirements of subsection (a) have not been met.

(d) If a majority of the board of directors consisted of qualified directors at the time the determination was made, the plaintiff shall have the burden of proving that the requirements of subsection (a) have not been met; if not, the corporation shall have the burden of proving that the requirements of subsection (a) have been met.

(e) Upon motion by the corporation, the court may appoint a panel of one or more individuals to make a determination whether the maintenance of the derivative proceeding is in the best interests of the corporation. In such case, the plaintiff shall have the burden of proving that the requirements of subsection (a) have not been met.

Miss. Code Ann. § 79-4-7.44 (Rev. 2013). We turn to the laws of other states whose statutory frameworks are similar to Mississippi's.

¶27.    Connecticut's statute is identical to Mississippi's. *See* Conn. Gen. Stat. § 33-724 (Rev. 2015).[5] The Appellate Court of Connecticut likewise was faced with the question of what standard to apply to a review of the trial court's dismissal of a shareholder's derivative complaint. ***Sojitz Am. Capital Corp. v. Kaufman***, 61 A.3d 566, 571 (Conn. App. Ct. 2013).[6]

---

[5] The statutes of both Mississippi and Connecticut are identical to the Model Business Corporation Act. *See* Model Bus. Corp. Act § 7.44 (3d ed. 2005).

[6] Among the states which have adopted the Model Business Corporation Act, we observe that ***Sojitz*** appears to be the most recent pronouncement from an appellate court on

14

¶28. The Appellate Court considered as persuasive authority the standards of review of Wisconsin and Florida, which, like Connecticut and Mississippi, have codified Section 7.44 of the Model Business Corporation Act:

> Two such states, Wisconsin and Florida, have clearly established that a trial court's dismissal of a derivative action will be reviewed by an appellate court as a mixed question of fact and law. In *Einhorn v. Culea*, . . . 591 N.W.2d 908 ([Wis. Ct.] App. 1999) rev'd on other grounds, . . . 612 N.W.2d 78 ([Wis. Ct. App.] 2000), the Wisconsin Court of Appeals held that "[w]hether the trial court properly found that the [committee] was independent within the meaning of [the statute] presents a mixed question of fact and law." The Florida Court of Appeals similarly concluded that a mixed standard of review is appropriate. *Batur v. Signature Properties of Northwest Fla., Inc.*, 903 So. 2d 985, 994-95 (Fla. [Dist. Ct.] App. 2005).

*Id.* at 572.

¶29. Based on persuasive authority from Wisconsin and Florida, the Appellate Court departed "from the well settled standard of review typically applied to motions to dismiss," because "Section 33-724 is distinguishable from other motions to dismiss, as it sets forth a unique, heightened pleading standard and elements that must be either proven or disproven." *Id.* (citing Conn. Gen. Stat. § 33-724). It concluded that "a departure from the usual standard of review governing motions to dismiss is warranted" and that "a dismissal pursuant to § 33-724 should be reviewed as a mixed question of fact and law." *Id.* at 572. The Appellate Court held that:

> It is well settled that mixed questions of fact and law are subject to plenary review by this court."[S]o-called mixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations, are not facts in this sense. . . . [Such questions require] plenary review by this court unfettered by the clearly erroneous standard. . . . When legal conclusions

the question of dismissal of shareholder derivative actions.

15

of the trial court are challenged on appeal, we must decide whether [those] . . . conclusions are legally and logically correct and find support in the facts that appear in the record."

*Id.* at 573 (quoting ***D'Appollonio v. Griffo-Brandao***, 53 A.3d 1013 (Conn. App. Ct. 2012)).

¶30.    In ***Einhorn***, the Supreme Court of Wisconsin more specifically stated that, when considering whether the trial court had properly reviewed the independence of a special committee under the Wisconsin dismissal statute,[7] "we will not reverse the trial court's findings of fact as to the independence of the [special committee] members unless they are clearly erroneous. . . . However, we review de novo the trial court's application of § 180.0744 to the facts as found." ***Einhorn***, 591 N.W.2d at 914.

¶31.    Because of the statutory similarities in Mississippi and Connecticut, Wisconsin, and Florida, we hold that appellate review of a dismissal of a shareholder derivative suit is a mixed question of law and fact. This Court has held that proper review of mixed questions of law and fact require that the trial court's "factual findings [be] reviewed for clear error and [that] its interpretation of the law [be] reviewed de novo." ***Hewes v. Langston***, 853 So. 2d 1237, 1241 (Miss. 2003) (citing ***United States v. Neal***, 27 F.3d 1035, 1048 (5th Cir. 1994)). With that framework established, we proceed to address the present appeal.

## ANALYSIS

1.    **Whether Burgess's complaint alleged with particularity facts establishing that the members of the Special Committee were not qualified under Mississippi Code Section 79-4-1.43.**

---

[7] Wisconsin Statutes Section 180.0744 is similar to Mississippi Code Section 79-4-7.44. *See* Wis. Stat. § 180.0744 (2015).

¶32. Burgess claims that he has "made a showing that there is reason to doubt that Franklin, Holliman, and Mitchell are all 'qualified' within the meaning of Mississippi law to serve on the Special Committee."

¶33. Section 79-4-7.44(c) requires that, "[i]f a derivative proceeding is commenced after a determination has been made rejecting a demand by a shareholder," the shareholder's complaint "*shall allege with particularity* facts establishing either (1) that a majority of the *board of directors* did not consist of *qualified directors* at the time the determination was made or (2) that the requirements of subsection (a) have not been met." Miss. Code Ann. § 79-4-7.44(c) (Rev. 2013) (emphasis added).

¶34. A "'qualified director' is a director who, at the time action is to be taken under: (1) Section 79-4-7.44, does not have (i) a material interest in the outcome of the proceeding, or (ii) a material relationship with a person who has such an interest." Miss. Code Ann. § 79-4-1.43(a)(1) (Rev. 2013). "Material relationship" is defined as "a familial, financial, professional, employment or other relationship that would reasonably be expected to impair the objectivity of the director's judgment when participating in the action to be taken . . . ." Miss. Code Ann. § 79-4-1.43(b)(1) (Rev. 2013). Likewise, "material interest" is defined as "an actual or potential benefit or detriment (other than one which would devolve on the corporation or the shareholders generally) that would reasonably be expected to impair the objectivity of the director's judgment when participating in the action to be taken." Miss. Code Ann. § 79-4-1.43(b)(2) (Rev. 2013).

17

¶35.   The Model Business Corporation Act, upon which Section 79-4-7.44 is based, provides commentary:

> Subsection (c), like Delaware law, assigns to the plaintiff the threshold burden of alleging facts establishing that the majority of the directors on the board are not qualified. If there is a majority, then the burden remains with the plaintiff to plead and establish that the requirements of subsection (a) . . . have not been met. If there is not a majority of qualified directors on the board, then the burden is on the corporation to prove that the issues delineated in subsection (a) have been satisfied; that is, the corporation must prove both the eligibility of the decision makers to act on the matter and the propriety of their inquiry and determination.

Model Bus. Corp. Act § 7.44 cmt. 2 (3d ed. 2005). Thus, the burden remains with the plaintiff to make the threshold showing that the majority of the directors on the board are not qualified. *See Sojitz*, 61 A.3d at 575 ("The court's determination as to whether the directors are qualified is, therefore, the threshold issue, and its resolution is essential to analyzing every other aspect of the statute.")

¶36.   Under the Connecticut statute, identical to that of Mississippi, a plaintiff "must not only plead that the directors are not qualified due to a material interest or material relationship, but must also plead these allegations with *factual particularity*." *Sojitz*, 61 A.3d at 574 (citing Conn. Gen Stat. §§ 33-605, 33-724(c)) (emphasis added). "This is a standard more demanding than mere notice pleading." *Sojitz*, 61 A.3d at 574. One case from the Supreme Court of Delaware dismissed, without prejudice, a complaint which it described as a "pastiche of prolix invective." *Brehm v. Eisner*, 746 A.2d 244, 249 (2000); *see Sojitz*, 61 A. 3d at 574 n.13. The *Brehm* court reasoned that "[p]leadings in derivative suits" must "comply with stringent requirements of factual particularity that differ substantially from the

18

permissive notice pleadings." ***Brehm***, 746 A.2d at 254. "What the pleader must set forth are particularized factual statements that are essential to the claim." ***Id.*** "A prolix complaint larded with conclusory language, like the Complaint here, does not comply with these fundamental pleading mandates." ***Id.***

¶37.    In ***Sojitz***, the plaintiff's derivative suit was dismissed after the board rejected his demand and, on appeal, the plaintiff argued that the court had erred in "concluding that a majority of qualified directors determined in good faith, after conducting a reasonable inquiry, that maintaining the plaintiff's derivative proceeding was not in the best interests of the corporation." ***Id.*** at 569. The defendant, a board member of Keystone Equipment Finance Corporation, had, in the course of business, "provided certifications to various financial lending institutions on which Keystone depended to meet its financing needs." ***Id.*** at 568. The plaintiff alleged that "these certifications falsely attested that the Keystone board of directors met, adopted resolutions and empowered Keystone's officers to enter into lending agreements on behalf of Keystone," which, the plaintiff claimed, exposed the corporation to potential fraud liability. ***Id.***

¶38.    But the Appellate Court of Connecticut affirmed the trial court's determination that the defendant directors were qualified directors under the statute, finding that the plaintiff had pled only conclusory allegations of director partiality. ***Id.*** at 575. The court observed that, on appeal, the shareholder had claimed that the directors had material interests in that they had escaped potential liability and were able to continue in their employment with the corporation by rejecting the shareholder's demand. ***Id.*** at 576. Furthermore, on appeal, the

plaintiff claimed a material relationship because of familial relations among corporate directors. *Id.* The court held that, in the complaint, "the plaintiff alleged only that the directors knew or disregarded the defendant's misdeeds and therefore were not 'in a position to dispassionately determine whether the instant litigation is in the best interests of Keystone.'" *Id.* That said, the court affirmed the trial court's determination that the directors had been qualified under the Connecticut dismissal statute. *Id.*

¶39. Conversely in *Einhorn*, the Supreme Court of Wisconsin considered the proper inquiry and standard for determining whether a member of a special committee is independent under Wisconsin Statutes Section 180.0744. *Einhorn*, 612 N.W.2d at 81.The Wisconsin court concluded:

> that in deciding whether members of the special litigation committee are independent, the circuit court should determine whether, considering the totality of the circumstances, a reasonable person in the position of the member of the special litigation committee can base his or her decision on the merits of the issue rather than on extraneous considerations or influences. In other words, the test is whether a member of the committee has a relationship with an individual defendant or the corporation that would reasonably be expected to affect the member's judgment with respect to the litigation at issue.

*Id.* at 81. In that case, Culea, Einhorn, and Einhorn's business partner, Mertz, acquired Northern Labs. The board of directors consisted of Culea, Culea's wife, Einhorn, Mertz, and the company's vice president of finance, Bonk; Culea, Mertz, and Bonk comprised a "compensation committee." *Id.* at 82. When the compensation committee unanimously approved a $300,000 retroactive bonus to Culea, Einhorn filed a direct action against Culea, which he later amended to state a derivative action, alleging that Culea "had willfully breached his fiduciary duty to Einhorn by participating in and causing the corporation to

20

award a self-dealing retroactive bonus to Culea of $300,000." *Id.* The board created a special committee, which consisted of board member Chewning, Culea's neighbor; CFO Bonk; board member Chua, Culea's wife's friend; and Beagle, Einhorn's business partner. *Id.* The special committee concluded that it was not in the best interests of the corporation to pursue Einhorn's derivative action. *Id.* at 83. The circuit court, having determined that the members of the committee were independent, that they had acted in good faith, and that their determination had been made based on a reasonable inquiry, dismissed the derivative action. *Id*. The Wisconsin Court of Appeals affirmed. *Id.*

¶40.    The Supreme Court of Wisconsin reversed, holding that the circuit court had not made sufficient findings of fact in determining the independence of the special committee. *Id.* at 81. The Court reviewed "the relations of the members of the special litigation committee to the corporation and the defendant Culea." *Id.* at 91. Bonk, Einhorn's friend, had received a $25,000 bonus at the same meeting at which Culea's bonus, the subject of Einhorn's derivative action, was challenged. *Id.* at 92. Outside counsel questioned his independence, and the court held that "[w]hether Bonk was independent should be determined on the basis of his employment status, his financial interest in the outcome and his personal relation with Culea." *Id.* Beagle, characterized as Einhorn's "right-hand man" and his "good friend and close business partner," openly admitted he was not independent. *Id.* Finally, "[t]he circuit court did not make findings of fact specifying the relationships of Chewning and Chua to Culea other than describing Chewning as a 'neighbor' and Chua as a 'social friend' of Mrs. Culea." *Id.* The Court held that, while "mere acquaintanceship and social interaction are not

21

*per se* bars to finding a member independent," relationships "with an individual defendant and the corporation are, however, factors the circuit court must consider in the totality of the circumstances." *Id.* at 93.

¶41. In the present case, Burgess's complaint stated that the following constituted disabling conflicts:

> [D]efendant Patterson currently serves on and has served on the board of directors of Furniture Brands International since 2004. Defendant Holliman, a member of the Special Committee, served as the CEO of Furniture Brands International from 1996-2008. Thus, defendants Patterson and Holliman have been business associates for at least seven years, serving on the boards of the companies the other served as CEO.
>
> Similarly, defendant Mitchell also has a disabling financial interest with BancorpSouth and its senior officers and directors. According to the LexisNexus [sic] website lawyers.com, defendant Mitchell's law firm, of which he is President, counts BancorpSouth among its clients. . . . This relationship was not disclosed in BancorpSouth's public filings, nor to Plaintiff upon his inquiry into the Special Committee's membership. Thus, it was to Mitchell's financial benefit to maintain BancorpSouth as a client of his law firm and as a result, he could not have acted disinterestedly or independently when considering the Demand to sue his own clients.
>
> The final Special Committee director, defendant Franklin (who also serves as BancorpSouth's Lead Director) has served on the Board since 1974. It is simply unreasonable to expect an individual who has worked with some of his fellow Board members (including defendant Patterson) for almost forty years to independently and disinterestedly consider a Demand to sue such longstanding friends and colleagues.

¶42. With regard to the alleged Patterson-Holliman connection, Mississippi Code Section 79-4-1.43(c)(2) specifically states that the following circumstance is, without more, not automatically foreclosed: "Service as a director of another corporation of which a director who is not a qualified director with respect to the matter . . . is or was also a director . . . ."

Miss. Code Ann. 79-4-1.43(c)(2). Without more, this claim fails. It is, as in **Brehm** and **Sojitz**, a mere conclusory allegation that is insufficient under the heightened pleading standard to sustain a derivative suit.

¶43.    BancorpSouth did, in fact, disclose "the relationship between Mr. Mitchell's law firm, Mitchell McNutt & Sams, P.A., and the amount BancorpSouth paid to said law firm for the year of his Special Committee service," which totaled $350 for 2010, according to a March 2011 proxy statement. A proxy statement from March 2010 reported to shareholders that Mitchell's law firm had received $4,655 in 2009. Under the New York Stock Exchange standards, a portion of which the defendants attached as an exhibit to the Motion to Dismiss, a director is considered not independent if "[t]he director has received . . . during any twelve-month period within the last three years, more than $120,000 in direct compensation from the listed company, other than director and committee fees and pension or other forms of compensation for prior service . . . ." The mere allegation, without more, that Mitchell himself must have benefitted financially from the Special Committee's decision not to pursue derivative claims is unavailing, given the relatively insignificant fees paid to Mitchell's law firm by the corporation over a two-year period. During that two years, Mitchell's law firm had garnered a mere $5,005 from BancorpSouth.

¶44.    Finally, Burgess's claim that Franklin had served on the board since 1974 and therefore must have developed longstanding, close personal friendships and connections as a result, fails. Mere allegations that directors "move in the same business or social circles, or a characterization that they are close friends, is not enough to negate independence . . . ."

23

***Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart***, 845 A.2d 1040, 1051-52 (Del. 2004). "That is not to say that personal friendship is always irrelevant to the independence calculus. But, for pre-suit demand purposes, friendship must be accompanied by substantially more in the nature of serious allegations that would lead to a reasonable doubt as to a director's independence." ***Id.*** at 1052. The mere fact that Franklin has friends and colleagues at the company is insufficient to call into question his independence as a member of the Special Committee.

¶45.   Burgess cites a case from the Supreme Court of Delaware in which that court held that a special committee "has the burden of establishing its own independence by a yardstick that must be 'like Caesar's wife'—'above reproach.'" ***Stewart***, 845 A.2d at 1055 (quoting ***Lewis v. Fuqua***, 502 A.2d 962, 967 (Del. Ch. 2003)). In ***Stewart***, the Supreme Court of Delaware continued that, "unlike the presuit demand context,[8] the [special committee] analysis contemplates not only a shift in the burden of persuasion but also the availability of discovery into various issues, including independence." ***Stewart***, 845 A.2d at 1055.

¶46.   The court stated that:

> We need not decide whether the substantive standard of independence in a [special committee] case differs from that in a presuit demand case. As a practical matter, the procedural distinction relating to the diametrically-opposed burdens and the availability of discovery into independence may be outcome-determinative on the issue of independence.

---

[8] As Burgess recognizes, Mississippi Code Section 79-4-7.42 requires a presuit demand. Miss. Code Ann. § 79-4-7.42 (Rev. 2013) ("No shareholder may commence a derivative proceeding until: (1) A written demand has been made upon the corporation to take suitable action . . . .").

*Id.* at 1055. But the context of ***Stewart*** was that of a presuit demand having been excused:[9]

> The [special committee] procedure is a method sometimes employed where presuit demand has already been excused and the [special committee] is vested with the full power of the board to conduct an extensive investigation into the merits of the corporate claim with a view toward determining whether—in the [special committee's] business judgment—the corporate claim should be pursued.

*Id.* In Mississippi, a shareholder's filing of a derivative suit is predicated upon the board's having declined to accede to the shareholder's demand that the board do so. Miss. Code Ann. § 79-4-7.42 (Rev. 2013). Therefore, the contexts are different under Mississippi and Delaware law and ***Stewart***, which involved a question of whether the plaintiff had sufficiently demonstrated demand futility[10] to excuse presuit demand. *Id.*; *see **Rales v. Blasband***, 634 A.2d 927, 934 (Del. 1993) ("[A] court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand.

---

[9] Presuit demand can be excused under Delaware law: "If the Court determines that the pleaded facts create a reasonable doubt that a majority of the board could have acted independently in responding to the demand, the presumption is rebutted for pleading purposes and demand will be excused as futile." ***Stewart***, 845 A.2d at 1049 (citing ***Rales v. Blasband***, 634 A.2d 927, 934 (Del. 1993)). In ***Stewart***, the court affirmed the chancellor's finding that the plaintiff had failed to allege "sufficient facts to support the conclusion that demand was futile . . . ." ***Stewart***, 845 A.2d at 1046.

[10] This Court specifically has rejected demand futility: "The fact is, Mississippi's written demand statute does not contain an exception for futility, and unless and until the Legislature decides to include one, it does not exist. ***Speetjens v. Malaco Inc.***, 929 So. 2d 303, 309 (Miss. 2006).

If the derivative plaintiff satisfies this burden, *then demand will be excused as futile*.") (emphasis added).

¶47. In the demand-excusal context, in which the plaintiff must demonstrate that a demand upon the board will be futile, the burden shifts to the special committee to "establish its own independence by a yardstick that must be 'like Caesar's wife'—'above reproach.'" ***Id.*** (quoting ***Lewis***, 502 A.2d at 967). Conversely, presuit demand unequivocally is required under Mississippi law; and so the threshold showing that the special committee was not qualified pursuant to Sections 79-4-7.44(c) and 79-4-1.43 rests with the plaintiff, as in Connecticut. ***Sojitz***, 61 A.3d at 574 (Plaintiff "must not only plead that the directors are not qualified due to a material interest or material relationship, but must also plead these allegations with *factual particularity*.")

¶48. Thus, the plaintiff is required to allege with particularity facts establishing that the members of the Special Committee were not qualified under Mississippi Code Sections 79-4-7.44 and 79-4-1.43. Here, Burgess has not made this threshold showing. Dismissal, therefore, was appropriate and is affirmed.

> **2. Whether the plaintiff or the defendant bears the burden under Section 79-4-7.44 of proving or rebutting the good faith of the Special Committee and the reasonableness of its inquiry and whether that burden was met in this case.**

¶49. Section 79-4-7.44(c) provides that, if a derivative proceeding is commenced by a shareholder despite the board's having rejected the shareholder's demand, the plaintiff's complaint "shall allege with particularity facts establishing either (1) that a majority of the board of directors did not consist of qualified directors at the time the determination was

26

made *or* (2) that the requirements of subsection (a) have not been met." Miss. Code Ann. §

79-4-7.44(c) (Rev. 2013) (emphasis added). Subsection (a) provides that:

> A derivative proceeding *shall be dismissed* by the court on motion by the corporation if one of the groups specified in subsection (b) or (f)[11] has determined in good faith, after conducting a reasonable inquiry upon which its conclusions are based, that the maintenance of the derivative proceeding is not in the best interests of the corporation.

Miss. Code Ann. § 79-4-7.44(a) (emphasis added). Subsection (d) states that:

> If a majority of the board of directors consisted of qualified directors at the time the determination was made, the plaintiff shall have the burden of proving that the requirements of subsection (a) have not been met; if not, the corporation shall have the burden of proving that the requirements of subsection (a) have been met.

Miss. Code Ann. § 79-4-7.44(d) (Rev. 2013); *see Sojitz*, 61 A.2d at 575 (citing Conn. Gen.

Stat. § 33-724(d)).

¶50.    The comment to the Model Business Corporation Act is instructive: "Subsection (c)

. . . assigns to the plaintiff the threshold burden of alleging facts establishing that the majority

of the directors on the board are not qualified. If there is a majority, then the burden remains

with the plaintiff to plead and establish that the requirements of subsection (a) . . . have not

been met." Model Bus. Corp. Act § 7.44 cmt. 2 (3d ed. 2005). "The burden of proof will shift

to the corporation, however, where a majority of the board members are not qualified and the

---

[11] These sections establish the possible groups charged with making the determination in Subsection (a). Applicable to the present case is Section 79-4-7.44(b)(2), which allows the good faith/reasonable inquiry determination to be made by "[a] majority vote of a committee consisting of (2) or more *qualified directors* appointed by majority vote of qualified directors present at a meeting of the board of directors, regardless of whether such qualified directors constitute a quorum." Miss. Code Ann. § 79-4-7.44(b)(2) (Rev. 2013) (emphasis added).

determination is made by a committee under subsection (b)(2)." *Id.* If the board is not qualified, the burden remains with the corporation to demonstrate that the "issues delineated in subsection (a) have been satisfied; that is, the corporation must prove both the eligibility of the decision makers to act on the matter and the propriety of their inquiry and determination." *Id.*

¶51. Having determined that the plaintiff failed to allege with particularity facts establishing that the members of the Special Committee were not qualified under Mississippi Code Sections 79-4-7.44 and 79-4-1.43, we hold that the plaintiff bears the burden, pursuant to Section 79-4-7.44(d), of establishing, pursuant to Section 79-4-7.44(a), that the Special Committee's determination was not made in good faith after it conducted a reasonable inquiry upon which its conclusions were based. If the plaintiff fails to demonstrate lack of good faith after a reasonable inquiry upon which the Special Committee's conclusions were based, then "[a] derivative proceeding *shall be dismissed* by the court on motion by the corporation . . . ." Miss. Code Ann. § 79-4-7.44(a) (emphasis added).

¶52. In *Sojitz*, the Appellate Court of Connecticut concluded that the Connecticut statute governing dismissal "operates as a statutory embodiment of the business judgment rule, which restricts our review of a corporate manager's decision." *Sojitz*, 61 A.3d at 578. The court considered the policy implications of deferring to corporate judgment: "'a corporation should be free to determine in its own business judgment whether litigation is in its best interest, free from unnecessary interference.'" *Id.* at 579 (quoting *Frank v. LoVetere*, 363 F. Supp. 2d 327, 335 (D. Conn. 2005)). The Connecticut statute, like Section 79-4-7.44(a),

28

required the Special Committee "to render a determination made in good faith after conducting a reasonable inquiry." *Sojitz*, 61 A.3d at 579.

¶53. According to the Appellate Court of Connecticut, "[b]ecause the inquiry varies according to the board's knowledge and the issues raised, the board must determine the scope of its inquiry." *Id.* The court continued:

> In this case, the record indicates that the board engaged counsel for assistance in evaluating the nature of the plaintiff's lawsuit after concluding that the issues raised by the plaintiff's allegations involved corporate management and lending relationships and were thus within the purview, knowledge and experience of the board. Each of the board members received a draft of the attorney's report prior to its adoption at the March 15, 2011 meeting. Furthermore, the board members who voted to adopt the report averred in their affidavits that they were aware of the facts and circumstances pertaining to the plaintiff's demands when they rendered their decision. Indeed, the report provides a list of the relevant documents and considerations that the board reviewed before reaching its conclusion.

*Id.* "[T]he board need not take any specific measures in the course of its inquiry, but instead must engage only in a *reasonable inquiry*, which varies according to the board's knowledge and the issues at hand." *Id.* at 580. Because it declined "to examine the propriety of the board's considerations," the Appellate Court of Connecticut affirmed dismissal. *Id.* at 580-81.

¶54. Likewise, the Court of Appeals of New York affirmed the trial court's dismissal of a shareholders' derivative action on the basis of the business judgment rule. *Auerbach v. Bennett*, 393 N.E.2d 994, 1004 (N.Y. 1979). The court held that the business judgment rule "is grounded in the prudent recognition that courts are ill equipped and infrequently called on to evaluate what are and must be essentially business judgments." *Id.* at 1000. The court

noted that, "[w]hile the court may properly inquire as to the adequacy of the committee's investigative procedures and methodologies, it may not under the guise of consideration of such factors trespass in the domain of business judgment." *Id.* at 1002.

¶55. The court found that, "[o]n the submissions made by defendants in support of their motions, we do not find either insufficiency or infirmity as to the procedures and methodologies chosen and pursued by the special litigation committee. That committee promptly engaged eminent special counsel to guide its deliberations and to advise it." *Id.* at 1003.

> The committee reviewed the prior work of the audit committee, testing its completeness, accuracy and thoroughness by interviewing representatives of Wilmer, Cutler & Pickering [special counsel], reviewing transcripts of the testimony of 10 corporate officers and employees before the Securities and Exchange Commission, and studying documents collected by and work papers of the [special counsel]. Individual interviews were conducted with the directors found to have participated in any way in the questioned payments, and with representatives of Arthur Andersen & Co. [outside auditors] Questionnaires were sent to and answered by each of the corporation's nonmanagement directors.

*Id.* "At the conclusion of its investigation the special litigation committee sought and obtained pertinent legal advice from its special counsel." *Id.* As such, the court found nothing "that requires a trial of any material issue of fact concerning the sufficiency or appropriateness of the procedures chosen by this special litigation committee" which might have raised "a triable issue of fact as to the good-faith pursuit of its examination by that committee." *Id.*

¶56. In the present case, Bancorp South retained outside counsel, Attorney Stephen Thomas of the law firm Bradley Arant Boult Cummings LLP, to assist the Special Committee

in conducting its inquiry into Burgess's demand. Prior to the Special Committee's statutory investigation, Thomas conducted "independence interviews with the Committee members to confirm their suitability to sit on the Committee" and, in addition, he "had the Committee itself conduct an independence interview with counsel to determine the independence of Bradley Arant Boult Cummings LLP." Thomas stated, in an affidavit attached to BancorpSouth's Motion to Dismiss that the "Special Committee, its counsel, and, often Professor Edwards, personally interviewed all 13 of the named directors and officers in the Demand letter." According to Thomas, the scope of the investigation was as follows:

A.    The allegations and claims set forth in the shareholder demand letter.

B.    The standard of care for directors and officers under Mississippi law.

C.    The oversight by the Board of Directors.

D.    The delay in filing 2009 Form 10-K and the announcement of a "material weakness."

E.    The impact of the announcement of late filing and the material weakness determination.

F.    The allegations of breach of fiduciary duty and unjust enrichment.

G.    An inquiry whether a fact-finder would find that Management (as defined in the Demand) breached their fiduciary duties by acting without good faith and due care, and specifically by acting in a grossly negligent manner.

H.    Consideration of whether Management would be protected from money damages by exculpatory provision.

I.    Consideration that Management would likely deny the allegations.

J.    Damages consideration.

K.    Cost of litigation.

L.    Consequences related to the Company's insurance coverage.

¶57. Professor Edwards was retained by Special Committee to advise it regarding investigation of the derivative demand. According to Professor Edwards, in an affidavit attached to BancorpSouth's Motion to Dismiss, she and Thomas had aided the Special Committee in its determination of its own impartiality and independence:

31

> Each member of the Special Committee affirmed to the Special Committee, Affiant, and B[radley] A[rant] B[oult] C[ummings] that he would make an independent and impartial determination as to what actions, if any, should be undertaken in the best interests of the Company; and that he had not been subjected to any undue or improper influence with respect to that determination.

Professor Edwards stated that, based on the impartiality determination, the Special Committee had determined that "its members were sufficiently independent and disinterested to serve as 'qualified directors' under Mississippi law, and to evaluate the allegations in the Demand in good faith, and to conduct an adequate and reasonable investigation of those allegations."

¶58.    The Special Committee, according to Professor Edwards, then conducted its investigation into the substance of Burgess's allegations and concluded that it was not in the company's best interests to prosecute. She stated, as had Thomas and Mitchell, that the Committee had considered the following in reaching its decision:

> (1) the likelihood that a fact-finder would find that Management breached its fiduciary duties, and was unjustly enriched, by failing to adequately oversee the Company's internal control over financial reporting with respect to its allowance for credit losses, and by issuing false and misleading 2009 financial results; (2) whether liability would be contested and affirmative defenses likely would be asserted, which would lead to greater uncertainty for a recovery and increased litigation expenses; (3) whether the directors would assert as a defense an exculpation clause in the Company's Articles of Incorporation against money damages; (4) the existence of cognizable and recoverable damages; and (5) to the extent cognizable damages exist, the cost and distraction of litigation, including the Company's indemnity obligations.

¶59.    Burgess makes only vague claims regarding whether the Special Committee had "determined in good faith, after conducting a reasonable inquiry upon which its conclusions are based, that the maintenance of the derivative proceeding is not in the best interests of the

corporation." Miss. Code Ann. § 79-4-7.44(a). He professes to be "unaware what documents were reviewed by the Special Committee or its counsel in reaching the conclusion that a derivative proceeding was not in the best interest of BancorpSouth." He says that, "while one of Defendants' supporting affidavits lists some of the individuals interviewed by the Special Committee, the list is vague and hardly complete and does not speak to whether any potential interviewee declined an interview request." Burgess couches his arguments in terms of his claim, discussed *infra*, that he was entitled to discovery, particularly of the Special Committee's report, which BancorpSouth maintains is subject to the work-product and attorney-client privileges. Burgess also claims that, "in order for a [Special Committee] to adequately conduct a good faith and reasonable investigation into the allegations raised in the Demand, the [Special Committee] was required to engage truly independent counsel."

¶60.     The Delaware cases cited by Burgess are inapposite. He cites *Zapata v. Maldonado*, 430 A.2d 779 (Del. 1981), and *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), to argue that, in order to secure dismissal of a derivative action, "the [Special Committee] has the burden of proving that: (i) the [Special Committee Members are independent; (ii) the [Special Committee] acted in good faith; (iii) the [Special Committee] had reasonable bases for its conclusions." But, in Delaware, where the Special Committee bears the "burden of proving independence, good faith and a reasonable investigation," the court "should inquire into the independence and good faith of the committee and the bases supporting its conclusions." *Zapata*, 430 A.2d at 788; *see Aronson*, 473 A.2d at 813.

33

¶61.    Comment 2 to Section 7.44 of the Model Business Corporation Act recognizes this distinction:

> Finally, section 7.44 does not authorize the court to review the reasonableness of the determination to reject a demand or seek dismissal. This contrasts with the approach in some states that permit a court, at least in some circumstances, to review the merits of the determination (*see **Zapata Corp. v. Maldonado***, 430 A.2d 779, 789 (Del. 1981) and is similar to the approach taken in other states (*see **Auerbach v. Bennett***, 393 N.E.2d 994, 1002-03 (N.Y. 1979)).

Model Bus. Corp. Act § 7.44 cmt. 2 (3d ed. 2005). Aside from the differences in Delaware law and Mississippi law regarding which party bears the burden of proof, the Delaware cases are unavailing in that they contemplate inquiry by the court into the "good faith of the committee and the bases supporting its conclusions." *Zapata*, 430 A.2d at 788; *see **Aronson***, 473 A.2d at 813.

¶62.    But, as in Connecticut, the Special Committee "need not take any specific measures in the course of its inquiry, but instead must engage only in a *reasonable inquiry*, which varies according to the board's knowledge and the issues at hand." *Sojitz*, 61 A.3d at 580 (emphasis in original). This Court, like the Appellate Court of Connecticut, should decline "to examine the propriety of the board's considerations." *Id.* at 580-81. Likewise, as in *Auerbach*, nothing raised by Burgess "requires a trial of any material issue of fact concerning the sufficiency or appropriateness of the procedures chosen by this special litigation committee" which might have raised "a triable issue of fact as to the good-faith pursuit of its examination by that committee." *Auerbach*, 393 N.E.2d at 1003.

¶63.    The burden remained with Burgess, in keeping with Section 79-4-7.44, to show that the Special Committee's decision not to maintain the derivative proceedings was not made

34

in good faith after conducting a reasonable inquiry to support its conclusions. Because Burgess failed to meet his burden, dismissal was appropriate and the Circuit Court of Lee County was not in error for granting dismissal to BancorpSouth.

> **3. Whether Burgess is entitled to discovery relating to the reasonableness of the Special Committee's determination that pursuit of the derivative claims was not in the best interests of the corporation, specifically whether Burgess is entitled to the Special Committee's report.**

¶64. Burgess argues that he was entitled to the report prepared by the Special Committee in its review of his presuit demand and that "limited discovery into the independence of the Special Committee and the good faith of its investigation" was available to him. Burgess also claimed that BancorpSouth's submission of the report to the circuit court, *in camera*, as an attachment to its Memorandum in Rebuttal to the [Plaintiff's] Opposition to Defendants' Motion for Protective Order, amounted to an *ex parte* communication with the circuit court which influenced its decision to grant dismissal.

¶65. Among more than thirty-seven requests for documents relating to the Special Committee's independence and impartiality and its investigation of Burgess's derivative demand, Burgess had sought, via a Request for Production of Documents, "[a]ll documents created by the Special Committee in connection with the Demand" and "[a]ll documents relating to any findings, conclusions or recommendations of the Special Committee." Defendants responded with a Motion for a Protective Order, arguing, first, that no law permitted Burgess to obtain discovery and to supplement his complaint at the pleading stage

prior to a ruling on the motion to dismiss. With regard to the content of the report, the defendants maintained their prior assertion of work-product and attorney-client privileges.

¶66.    On appeal, BancorpSouth maintains that it submitted the Special Committee's report to aid the circuit court's consideration of its Motion for a Protective Order, which the circuit court ruled moot in the dismissal order. Further, BancorpSouth maintains that the Special Committee's report was subject to work-product and attorney-client privileges.

¶67.    In *Grimes v. DSC Communications Corporation*, the Court of Chancery of Delaware for New Castle County considered an action filed by Grimes, "pursuant to 8 Del C. § 220[12] seeking the inspection of certain books and records of the defendant, DSC Communications Corp. ("DSC"), a Delaware corporation." *Grimes v. DSC Commc'n Corp.*, 724 A.2d 561, 563 (Del. Ch. 1998) (*Grimes II*). A prior derivative action filed by Grimes had been dismissed because the complaint failed "to include particularized allegations which would raise reasonable doubt that the Board's decision to reject the demand was the product of a valid business judgment." *Grimes v. Donald*, 673 A.2d 1207, 1220 (Del. 1996) (*Grimes I*), *overruled on other grounds by **Brehm v. Eisner**, 746 A.2d 244 (Del. 2000).*

¶68.    In *Grimes II*, in considering Grimes's sought inspection of DSC's books and records, the Court of Chancery held that "[i]t is well settled law in Delaware that a plaintiff who files a derivative suit is not entitled to discovery in that action in order to assist him or her in

---

[12] This code section allows "any stockholder, in person or by attorney or other agent," to, "upon written demand under oath stating the purpose thereof, have the right during the usual hours for business to inspect for any proper purpose, and to make copies and extracts from: (1) [t]he corporation's stock ledger, a list of its stockholders, and its other books and records . . . ." Del. Code Ann. tit. 8, § 220(b) (2015).

meeting the particularized pleading requirements . . . ." *Grimes II*, 724 A.2d at 565. The court continued: "In reaffirming this strict rule in *Grimes* [*I*], the Supreme Court noted that derivative plaintiffs have other avenues available by which to obtain information bearing on the subject of their claims outside the civil discovery context." *Id.* (citing *Grimes I*, 673 A.2d at 1216 n.11). "Surprisingly, little use has been made of section 220 as an information-gathering tool in the derivative context." *Grimes I*, 673 A.2d at 1216 n.11. *Grimes I*, of note, dealt with the context of a shareholder's failure to meet the pleading requirements in the context of demand futility: "[I]f the stockholder cannot plead such assertions . . . , after using the 'tools in hand' [Section 220] to obtain the necessary information before filing a derivative action, then the stockholder must make a pre-suit demand on the board." *Grimes I*, 673 A.2d at 1216.

¶69.    Ultimately, in response to the DSC's argument that sought documents—including a report prepared by the special committee containing analysis and advice and recommendations regarding Grimes's demands—were subject to the attorney-client privilege, the Court of Chancery ruled that Grimes had demonstrated good cause for production of the documents under Section 220: "Of particular import is the fact that the documents sought are unavailable from any other source while at the same time their production is integral to the plaintiff's ability to assess whether the board wrongfully refused his demand—the stated purpose of his Section 220 demand." *Grimes II*, 724 A.2d at 569. Likewise, the Court of Chancery ruled that Grimes had "demonstrated a 'substantial need' for the information which the defendant asserts is protected by the work product doctrine." *Id.* at 570.

¶70.    Here, it is the sufficiency of the complaint, not a request for documents,[13] with which this Court is now concerned. In the present case, as in *Grimes I*, the question is whether Burgess's complaint included "particularized allegations which would raise a reasonable doubt that the Board's decision to reject the demand was the product of a valid business judgment." *Grimes I*, 673 A.2d at 1220.

¶71.    In considering whether the plaintiff in *Auerbach* was entitled to discovery, the Court of Appeals of New York held that the plaintiff had failed to "identify any particulars as to which he desires discovery relating to the disinterestedness of the members of the special litigation committee or to the procedures followed by that committee." *Auerbach*, 393 N.E.2d at 1004. Decrying the plaintiff's claims that "something might be caught on a fishing expedition," that court ruled that:

> The disclosure proposed and described by [plaintiff] . . . would go only to particulars as to the results of the committee's investigation and work, the factors bearing on its substantive decision not to prosecute the derivative actions and the factual aspects of the underlying first-tier activities of defendants all matters falling within the ambit of the business judgment doctrine and thus excluded from judicial scrutiny.

*Id.* at 1004.

---

[13] Mississippi, like Delaware, has a statute which allows a shareholder "to inspect and copy, during regular business hours at a reasonable location specified by the corporation, any of the following records if the corporation if the shareholder meets the requirements of subsection (c) and gives the corporation a signed written notice of his demand at least five (5) business days before the date on which he wishes to inspect and copy: (1) [e]xcerpts from minutes of any meeting of the board of directors . . . ; (2) [a]ccounting records of the corporation; and (3) [t]he record of shareholders." Miss. Code Ann. § 79-4-16.02(b) (Rev. 2013). BancorpSouth notes that "Burgess has not brought that type of action but rather instituted solely a derivative action."

38

¶72. Burgess cites recent changes to the Mississippi Uniform Limited Partnership Act. This statute provides that "[i]f a limited partnership is named as or made a party in a derivative proceeding the partnership may appoint a special litigation committee to investigate the claims asserted in the proceeding and determine whether pursuing the action is in the best interests of the partnership." Miss. Code Ann. § 79-14-905(a) (Supp. 2015). The statute specifies that "a special litigation committee shall file with the court a statement of its determination and its report supporting its determination and shall serve each party with a copy of the determination and report." Miss. Code Ann. § 79-14-905(e) (Supp. 2015).

¶73. But legislative alteration of one statute does not require that another statute, in an entirely separate and distinct act, be ascribed some new and different meaning. Of course, "[i]t is a well-settled rule of statutory construction that 'when two statutes *pertain to the same subject*, they must be read together in light of legislative intent.'" ***Tunica Cty. v. Hampton Co. Nat'l Sur., LLC***, 27 So. 3d 1128, 1133 (Miss. 2009) (quoting ***Lenoir v. Madison Cty.***, 641 So. 2d 1124, 1129 (Miss. 1994)) (emphasis added). Here, the two statutes do not pertain to the same subject: one governs special litigation committees in derivative proceedings relating to limited partnerships; the other governs dismissal of derivative proceedings in which a corporate Special Committee has determined in good faith after having conducted a reasonable inquiry that maintenance of the derivative proceeding is not in the best interests of the corporation.

¶74. Burgess may be entitled to the Special Committee's report under Section 79-4-16.02(a), the statute governing rights of shareholders to inspect corporate records. But no

39

such demand currently is before the Court. Instead, Burgess claims that he is entitled, at the pleadings stage of his derivative lawsuit after his demand was rejected, to the report prepared by the Special Committee in its review of his presuit demand. But, as in *Grimes II*, "a plaintiff who files a derivative suit is not entitled to discovery in that action in order to assist him or her in meeting the particularized pleading requirements . . . ." *Grimes II*, 724 A.2d at 565. Simply because "something might be caught on a fishing expedition" is not a sufficient reason to allow Burgess to augment his pleadings with discovery. *Auerbach*, 393 N.E.2d at 1004. The trial court's ruling that, "in derivative proceedings you must have a legally sufficient Complaint in order to conduct discovery," was not erroneous.

¶75.    Finally, Burgess argues that the *in camera* submission of the Special Committee's report amounted to *ex parte* communication with the Special Judge. Burgess had filed a Request for Production of Documents, which was opposed by the responsive Motion for Protective Order filed by BancorpSouth. The Special Judge ruled that his grant of dismissal to BancorpSouth rendered its Motion for Protective Order moot. But BancorpSouth asserted work-product and attorney-client privilege, and this Court has held that it is the circuit court's responsibility "to conduct a careful and detailed *in camera* review of all documents over which privilege is asserted." *Powell v. McLain*, 105 So. 3d 308, 315 (Miss. 2012). The *in camera* submission of a document over which a privilege is asserted for consideration by the circuit court was appropriate and did not amount to an *ex parte* communication.

## CONCLUSION

¶76. Because Burgess has not alleged with particularity facts establishing that members of the Special Committee were not qualified under Mississippi Code Sections 79-4-7.44 and 79-4-1.43, dismissal was appropriate. Pursuant to Section 79-4-7.44, the burden remained with Burgess to show that the Special Committee's decision to reject the shareholder's demand was not made in good faith after the committee had conducted a reasonable inquiry to support its conclusions. Burgess failed to demonstrate that the Special Committee's decision was not made in good faith after it had conducted a reasonable inquiry. The Circuit Court of Lee County, therefore, was not in error for granting dismissal to BancorpSouth. Finally, the Special Judge correctly ruled that obtaining discovery in derivative proceedings is predicated on the sufficiency of the complaint.

¶77. **AFFIRMED.**

**WALLER, C.J., DICKINSON, P.J., KING AND COLEMAN, JJ., CONCUR. RANDOLPH, P.J., LAMAR, MAXWELL AND BEAM, JJ., NOT PARTICIPATING.**